[Civ. No. 12456. Third Dist. Jan. 25, 1972.]

SYDNEY C. CASWELL, Plaintiff and Appellant, v.
EDWARD J. LYNCH et al., Defendants and Respondents.

**COUNSEL**

Reynold J. Gualco for Plaintiff and Appellant.

Mento, Buchler & Littlefield and J. Scott Buchanan for Defendants and Respondents.

**OPINION**

**RICHARDSON, P. J.**—Plaintiff, employee of a subcontractor on a construction job, appeals from a nonsuit in an action for personal injuries against defendants who are both owners of and general contractors on the construction of the residence in question.

The issues presented, simply stated, are whether defendants owed plaintiff, an employee of a subcontractor, a duty of care, and, if so, what the nature of the duty was, and whether the duty was breached.

Plaintiff was employed by a sheetrock contractor, who, in turn, was hired as a subcontractor by defendants, the owners and general contractors. On July 19, 1965, plaintiff and two fellow employees were working on the residence in which the walls, windows, roof, plumbing, wiring and framing had been completed. While plaintiff was in the process of installing sheetrock on the furnace-room ceiling, and while no other subcontractors were working on the premises, a piece of lumber fell from above the ceiling, striking plaintiff's right wrist, knocking him to the floor and causing personal injuries.

No direct evidence was introduced as to what caused the lumber to fall, or as to the identity of the party who had placed the lumber above the ceiling. It could be inferred from the statements of one witness that the framing was done by a subcontractor of the defendants.

The lumber causing the injury was described as a two-by-six approximately 5 to 7 feet in length with two nails toe-nailed through the wood at one end, and with two other nails lightly driven into the other end. It is reasonable to presume that the object causing the injury was jarred loose from its position on the joists by the hammering incident to installation of the sheetrock.

Additionally, the record reflects testimony of plaintiff that while he was in the company of Wendell Rhoads, Rhoads had a conversation after the accident in question with Payne, a supervising foreman for defendants, to the effect that he (Payne) "was very meticulous in his work and if it was his boys this never would have happened, but he's got four or five instances of the same thing, and he's going to have to get on them because they haven't been nailing the braces in." Rhoads was called as a witness and described the conversation as occurring at one of the construction sites of defendants' duplexes shortly after and on the same day that a similar "two-by-six fell out of the ceiling and almost struck me." Rhoads quoted Payne as saying defendants "had tried to keep [sic] the guys to clean up the debris, out of the attics . . . he tried to get his men to clean it up"; that he "tried to get someone to clean up debris on the joists"; and that Rhoads, together with others, before the accident in question had asked Payne to "clean their buildings out too."

■ As a general rule no liability is imposed upon a general contractor for injuries caused by the negligence of the employee of a subcontractor. (Prosser, Law of Torts (3d ed.) p. 480.) The rationale for the principle has been said to be an absence of the right of control over the manner in which the work is done. Thus, the responsibility for injury falls upon the independent contractor. Numerous exceptions to the rule have been recognized which Prosser has grouped as follows: (1) those in which the

employer's own negligence is involved and which do not accordingly present issues of vicarious liability but the employer's own negligence, (2) cases involving "nondelegable duties," and (3) activities "inherently dangerous."

■ Certain provisions of the Labor Code (§ § 6302, 6304, 6400, 6404) treat employees of subcontractors as "employees" of contractors for purposes of imposing liability to provide a safe place of employment, but they do not impose an affirmative duty to supervise safety, and they do not impute to the general contractor knowledge of a negligent subcontractor. To fasten on a general contractor the duty of supervising and inspecting labor and equipment used is thus to require the general contractor to become, in effect, the safety inspector on the job. (*Hard* v. *Hollywood Turf Club* (1952) 112 Cal.App.2d 263, 266 [246 P.2d 716].) In the language of *West* v. *Guy F. Atkinson Constr. Co.* (1967) 251 Cal.App.2d 296, 299 [59 Cal.Rptr. 286] "there is no vicarious liability."

We do not read the foregoing authorities as immunizing, however, the general contractor from liability in those cases where the general contractor has himself knowledge, actual or constructive, of a condition hazardous to those who come upon the premises, and such degree of control as permits reasonable preventive or protective measures to be taken by him. Such a conclusion is the import of the following language of *Kuntz* v. *Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100, 105 [18 Cal.Rptr. 527, 368 P.2d 127]: "[W]here a general contractor knows from matters coming to his attention that work done by a subcontractor has created a type of dangerous condition which may reasonably be expected to recur unless precautions are taken and that employees of other subcontractors may be exposed to the danger without being aware of its existence, he has a duty to exercise reasonable care to protect those employees and may be held liable if his failure to do so is a proximate cause of injury to them." When liability is imposed in such a situation, it is predicated upon no vicarious or derivative relationship between general contractor and independent contractor. Rather, it is the affirmative duty of the contractor himself, independent of any contractual relationship with others, which duty is owing to all those persons who reasonably might be expected to come on the premises.

■ In the instant case some evidence was presented from which the following might be reasonably inferred: defendants, through their supervising foreman, Payne, had knowledge that in four or five instances "they," referring presumably to employees of the framing subcontractor, "haven't been nailing the braces in"; that defendants had "tried to keep [*sic*] the guys to clean up the debris, out of the attics"; that he had "tried to get someone to clean up debris on the joists"; and that fellow employees of

plaintiff, before the accident in question, had asked Payne to "clean their buildings out . . . ." From the foregoing, a jury could reasonably have concluded that preceding the accident defendants had actual knowledge of an accumulation of either debris or improperly secured wooden members in the ceiling joists of the residence in question. Such "debris" or wooden members constituted a hazard and danger to workmen situated in the area below the joists, who might be struck at any time if the "debris" or wooden members were jarred loose. Additionally, it could be inferred that there was a reasonable opportunity to correct this condition and belated or ineffective measures in that direction were taken. In any event, a trier of fact herein had some evidence on which it could have concluded that defendants, owners-general contractors, had notice of a condition dangerous or hazardous to workmen on the job site caused by someone, presumably the employees of another subcontractor. No subcontractor or employees were on the job at the time of the accident other than plaintiff and fellow employees of one sheetrock subcontractor. The jury could reasonably have made any of a number of inferences—prior knowledge, actual possession, control, reasonable opportunity to correct the condition or warn of the danger. We cannot say that there is *no* evidence to support a finding of a duty of care, its breach and the imposition of liability.

A nonsuit was granted by the trial court herein. Such a procedure is controlled by well-settled principles. ■ "It has become the established law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' (*Newson* v. *Hawley,* 205 Cal. 188 [270 P. 364]; *Perera* v. *Panama-Pacific Int. Exp. Co.,* 179 Cal. 63 [175 P. 454]; *Estate of Sharon,* 179 Cal. 447 [177 P. 283]; *Estate of Gallo,* 61 Cal.App. 163, 175 [214 P. 496]; 24 Cal. Jur., pp. 912-918.) Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury." (*Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768].)

■ Although in important areas the evidence herein was unclear

and much of it was conflicting, we find evidence of sufficient substantiality to require the determination of the issues by a trier of fact herein.

The judgment of nonsuit is reversed and the case is remanded for further proceedings.

Friedman, J., and Regan, J., concurred.