[Civ. No. 13934. Third Dist. Apr. 22, 1975.]

TERESA JUNE ADDISON, a Minor, etc., et al.,
Plaintiffs and Appellants, v.
SUSANVILLE LUMBER, INC., Defendant and Respondent.

**Counsel**

Patrick J. McCarthy, Alan H. Thieler, Dodge, Reyes, Brorby, Kahn & Driscoll and Robert P. Brorby for Plaintiffs and Appellants.

Price, Burness & Price and Robert E. Burness for Defendant and Respondent.

---

**OPINION**

**PARAS, J.**—Plaintiffs, the heirs of Michael Eugene Addison ("Addison"), appeal from a judgment of nonsuit entered on the motion of defendant, Susanville Lumber, Inc. ("Susanville") after plaintiffs had completed their opening statement to the jury in an action for wrongful death.

### OPENING STATEMENT

In relevant part, plaintiffs asserted in their opening statement that the evidence would show:

Susanville entered into a timber sale contract with the United States Forest Service wherein Susanville agreed to log 1,500 acres of government property in Lassen County. The written contract required Susanville to construct a logging road on the federal land. Susanville subcontracted the entire job of road construction to Bee & Bee Logging, Inc. ("Bee & Bee").[1] The written subcontract provided, in part, that the felling of trees on the right-of-way would be performed by Bee & Bee "or by someone with whom it subcontracted." Bee & Bee's employees did not include any tree fallers. Accordingly, the felling of trees on the right-of-way was subcontracted orally by Bee & Bee to Leo Fain, a professional tree faller.

Fain's men commenced work early in October 1968. Their task was to clear the right-of-way not only of timber having commercial value but also of snags and unmerchantable trees. Fain's professional tree fallers would normally work two or three days ahead of the Bee & Bee road construction crew, of which Addison was a member. Addison was 18 years old and had been employed by Bee & Bee as a laborer immediately upon his graduation from high school. He remained in that employment until his death four months later. For a one-week period during such employment he did logging work for Bee & Bee. Before graduation, his only work experience consisted of brief stints as a service station attendant and dish washer.

---

[1] Bee & Bee, a cross-defendant, is not a party to this appeal.

The function of the Bee & Bee road construction crew was to cut brush and shrubs in the right-of-way, and to haul them away, along with the logs cut by the Fain group. Addison's part of that task was to use a small chain saw to cut shrubs, "small" trees, and anything else which had to be cleared in order to build the road. He also would tie cables around the piles of cuttings so that a tractor could haul them away.

Occasionally the Fain tree fallers would overlook a tree which they should have cut. Sometimes they would pass a tree by because it was not marked as a snag or because it was located just outside the right-of-way and became an obstacle only when the Bee & Bee crew later decided to widen the road. These few trees would be cut down either by the Bee & Bee road construction foreman or by Addison when ordered by the foreman.

On October 31, 1968, Bee & Bee's road construction foreman ordered Addison to cut down a tree which the Fain group had overlooked or passed by. The tree was 30 to 45 feet tall; it weighed 1,200 to 1,500 pounds; and its base measured 8 to 12 inches in diameter at the height of a man's chest. Addison had insufficient experience to fell the tree safely. He had not received adequate instruction from Bee & Bee or anyone else. He was not provided with a working partner.

Shortly after Addison went over to the tree with his chain saw, he was found lying on the ground near its fresh stump. He had suffered crushing blows to his head and chest and died on the way to a Reno hospital. There was no direct witness to the accident. The types of saw cuts found afterward in the tree, however, were those which an untrained person would make. Because of the manner in which the tree was cut, it jackknifed as it fell—setting up a spring action in the stump which, when released, was of sufficient force to inflict the fatal injuries.

## I. The Nonsuit

■ "A nonsuit may be granted on plaintiff's opening statement [only] when it clearly appears from all the facts stated and all favorable inferences that may be reasonably deduced therefrom that a cause of action does not exist." (*Palazzi* v. *Air Cargo Terminals, Inc.* (1966) 244 Cal.App.2d 190, 194 [52 Cal.Rptr. 817].)

■ "Where an employer [Susanville] hires a contractor [Bee & Bee] to do work which the employer should recognize as likely to create a

peculiar risk of physical harm to employees [Addison] of the contractor unless special precautions are taken, the employer is subject to the nondelegable duty to take such precautions. [Citations.] The duty and liability to an injured employee of an independent contractor may arise either under Restatement Second, Torts, section 413[2] [citation] or section 416.[3] [Citation.] Section 413 makes the employer of the independent contractor directly liable for his own negligence, while section 416 imposes a vicarious liability for the negligence of the independent contractor." (*Stilson v. Moulton-Niguel Water Dist.* (1971) 21 Cal.App.3d 928, 938 [98 Cal.Rptr. 914].)

■ An employee of an independent contractor comes within the word "others" as used in sections 413 and 416 of the Restatement Second, Torts. (*Van Arsdale v. Hollinger* (1968) 68 Cal.2d 245, 254 [66 Cal.Rptr. 20, 437 P.2d 508]; *Woolen v. Aerojet General Corp.* (1962) 57 Cal.2d 407, 410-411 [20 Cal.Rptr. 12, 369 P.2d 708].)

■ Immediately prior to and again during the opening statement, plaintiffs repeatedly informed the trial court that they were not contending that Susanville had been itself negligent but rather that Susanville was vicariously liable under BAJI No. 13.21 (1969 ed.).[4] Accordingly this appeal concerns the applicability of Restatement Second, Torts, section 416 rather than section 413 (see *Stilson v. Moulton-Niguel Water Dist., supra* at p. 938).

---

[2]"One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer (a) fails to provide in the contract that the contractor shall take such precautions, or (b) fails to exercise reasonable care to provide in some manner for the taking of such precautions."

[3]"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

[4]The 1969 version of BAJI No. 13.21 (revised in 1974 after the judgment in this case) provided: "Ordinarily one who employs an independent contractor is not liable for the acts or omissions of such contractor or its employees. However, there are exceptions to the general rule. One who employs an independent contractor to do work which the employer should recognize as necessarily requiring the creation during its progress of a condition involving a peculiar risk of bodily harm to others, unless special precautions are taken, is subject to liability for bodily harm proximately caused to them by the failure of the contractor to exercise reasonable care to take such precautions [unless the employer himself has taken reasonable precautions against such risk]." (Bracketed material in original.)

The issue therefore is whether the anticipated evidence described in the opening statement would have shown a "peculiar risk of physical harm to others unless special precautions are taken" within the meaning of Restatement Second, Torts, section 416. We agree with the trial court that such risk was not shown.

In the opening statement, plaintiffs undertook to identify both the *peculiar risk* and the *special precautions* which would bring Restatement Second, Torts, section 416 into play. They identified the risk as follows: "What was this peculiar risk? The risk was that . . . Leo Fain would not cut all the trees in these circumstances. It was contemplated that Bee & Bee using men who were cat skinners to do their work, or laborers who were assisting in that work, would cut a tree down in these circumstances. And why was that a peculiar risk? It was a peculiar risk because in these circumstances, and with respect to that problem, it was recognizable from the beginning that someone would be required to work for Bee & Bee Logging who wasn't a qualified tree faller, would be required to cut a tree down in these circumstances."

The special precautions were identified in the opening statement as follows:[5]

"I offer to tell the jury that the evidence will show that Susanville Lumber could have taken the precautions not to let such an inexperienced, untrained individual as Addison cut that tree. I offer to tell the jury that the evidence will show that the road superintendent Terry could have gone on cutting such trees, and such as the tree that killed the deceased, as he had on earlier occasions on this job and in that work. I offer to tell the jury that the evidence will show that the special precautions, if, in fact, Addison was going to be used, that special precautions could have been taken to sufficiently teach him safe practices and methods to cut that tree.

"Further, I offer to state to the jury that the evidence will show that an experienced person could have been present at that time and place when he was required to cut that tree. I offer to tell the jury that tree fallers were being paid sixty to sixty-five dollars a day at that time, and that the deceased was being paid $2.75 an hour; and I offer to tell the jury that

---

[5]This quoted portion is not a literal part of the opening statement, not having been spoken to the jury. It was delivered to the court in the jury's absence and accepted by the court as part of the opening statement for purposes of ruling on the nonsuit motion. It is thus comparable to an offer of proof.

the evidence will show that the special precautions could have been taken to require that experienced, qualified tree fallers be hired, designated, and used to cut such a tree as the tree that killed the deceased; and I offer to tell the jury that the evidence will show that the Bee & Bee Logging Company also could have taken the precaution to require, and Susanville Lumber could have seen they took the precaution to require that there be a working partner in sound and sight of the deceased at the time he was cutting that tree."

Summarizing, the peculiar risk asserted was the possible use by Bee & Bee of an untrained person to cut down a substantial tree; the special precautions asserted are: (1) not to use an untrained person for such work; (2) to train an otherwise untrained person before permitting him to do such work, and (3) to have a trained person in close attendance when an untrained person does such work. Essentially both the "peculiar risk" and the "special precautions" focus upon the single concept of employing an unskilled person to do a skilled job. It is noteworthy that the opening statement nowhere asserted that Susanville failed to exercise reasonable care to employ a competent and careful contractor.

In determining whether such circumstances are within the purview of Restatement Second, Torts, section 416, we look to comment b thereof, (which refers to and makes applicable com. b of Rest.2d Torts, § 413). We quote therefrom: "b. *Peculiar risk and special precautions.* It is obvious that an employer of an independent contractor may always anticipate that *if the contractor is in any way negligent toward third persons, some harm to such persons may result.* Thus one who hires a trucker to transport his goods must, as a reasonable man, always realize that if the truck is driven at an excessive speed, or with defective brakes, some collision or other harm to persons on the highway is likely to occur. *This Section has no reference to such a general anticipation of the possibility that the contractor may in some way be negligent. It is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work.* Such precautions are the responsibility of the contractor; and if the employer has exercised reasonable care to employ a contractor who is competent and careful (see § 411), he is not required to provide, in the contract or otherwise, that the contractor shall take them." (Italics added.)

Analyzing the facts recited in the opening statement in the light of this clarifying language, it is at once apparent that neither Restatement

Second, Torts, section 416 nor section 413 is applicable. It is axiomatic that every person who employs any contractor may anticipate that if the contractor hires untrained or otherwise incompetent employees, they will do their work unsatisfactorily, thus perhaps endangering themselves and third persons. Such a risk is ever present. But there is nothing peculiar or special about it; on the contrary it is common and general, and applicable to virtually every activity. It is identical to the driving of a truck at excessive speeds or with defective brakes. The employment of competent employees to do skilled work is a routine precaution of a kind which any careful contractor may reasonably be expected to take. If we held this risk to be a "peculiar risk" within the meaning of Restatement Second, Torts, section 416, it would be tantamount to a holding that any "general anticipation of the possibility that the contractor may in some way be negligent" would result in vicarious liability, directly contrary to the expressed intention of section 416.

Comment b provides further: "This Section is concerned with special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, *against which a reasonable man* would recognize the *necessity* of taking special precautions. The situation is one in which a risk is created which is not a normal, routine matter of customary human activity, such as driving an automobile, but is rather a *special danger* to those in the vicinity, arising out of *the particular situation created, and calling for special precautions.* 'Peculiar' does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a *special, recognizable* danger arising out of the work itself." (Italics added.)

This statement again militates against the applicability of Restatement Second, Torts, section 416 to this case. There being no suggestion of failure to select a careful and competent contractor, no reasonable person could be expected to recognize any necessity for taking special precautions to assure that the contractor will not hire untrained tree fallers, any more than that a contractor will not use trucks with defective brakes, or will not hire unlicensed and untrained truckdrivers. True it is that falling trees present a special danger to those in the vicinity thereof (including tree fallers), but plaintiffs do not claim that this risk makes Restatement Second, Torts, section 416 applicable. Indeed it is hard to conceive of any special precautions one could take in a rural forest area to eliminate such a risk. The risk plaintiff claims is the general risk of a contractor's own individual active negligence toward his

employee, which as above stated is not within the purview of Restatement Second, Torts, sections 413 or 416.

A study of California decisions interpreting the Restatement supports our conclusion.

"Work of an independent contractor which has been characterized as creating a peculiar risk of physical harm absent special precautions includes eradicating white line markings on a street with the risk a motorist will injure a workman (*Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d 245), repairing a metal tank from the inside by forcing buckled metal outward with the risk that the metal would spring inward and injure a workman (*Ferrel* v. *Safway Steel Scaffolds, supra,* 57 Cal.2d 651 [21 Cal.Rptr. 575, 371 P.2d 311]), painting the inside of a tank with the risk of an explosion because of inadequate ventilation (*Woolen* v. *Aerojet General Corp., supra,* 57 Cal.2d 407), building a concrete floor and wall, without railings, to a height of 10 feet with the risk that a workman might fall or be pushed from the wall (*Morehouse* v. *Taubman Co., supra,* 5 Cal.App.3d 548 [85 Cal.Rptr. 308]), backing a loaded truck on a construction project without a warning device with the risk that a worker might be run down (*Anderson* v. *L. C. Smith Constr. Co.,* 276 Cal.App.2d 436 [81 Cal.Rptr. 73]), relining the inside of a tank with the risk of an explosion because of inadequate ventilation (*McDonald* v. *City of Oakland,* 233 Cal.App.2d 672 [43 Cal.Rptr. 799]), and digging a trench without adequate bracing with the risk that a workman might be injured by a cave-in (*Widman* v. *Rossmoor Sanitation, Inc., supra,* 19 Cal.App.3d 734 [97 Cal.Rptr. 52]; *Delgado* v. *W. C. Garcia & Associates,* 212 Cal.App.2d 5 [27 Cal.Rptr. 613])." (*Stilson* v. *Moulton-Niguel Water Dist., supra,* pp. 938-939.)

It is noted that in every case in which vicarious liability was imposed there was a foreseeable specific risk which could have been guarded against by particular physical precautions. And in *Caswell* v. *Lynch* (1972) 23 Cal.App.3d 87 [99 Cal.Rptr. 880], this court held that where, despite initial inapplicability of the Restatement rule, if during the course of the work actual or constructive knowledge of a hazardous condition is given to the contractor, which he can reasonably remedy, liability may attach for a failure to do so. Notably, this is not vicarious but direct liability. (*Caswell* v. *Lynch, supra,* at p. 91; see also com. d to Rest. 2d, Torts, § 413.)

But where an injured man's employer furnishes him with a defective scaffold which causes the injury, there is no vicarious liability imposed upon the person who contracted with the employer for the work. (*Hard* v. *Hollywood Turf Club* (1952) 112 Cal.App.2d 263 [246 P.2d 716].)[6] And in *West* v. *Guy F. Atkinson Constr. Co.* (1967) 251 Cal.App.2d 296 [59 Cal.Rptr. 286], the plaintiff was employed by a subcontractor of the defendant and was working .30 feet above the ground during construction of a highway overpass. He fell to the ground as a result of activity in which the defendant's employees were in no way involved. Speaking through Presiding Justice Pierce, this court said: "There are various situations in which a duty of care does exist, e.g., where an owner-general contractor employs an independent subcontractor to do work *which the general contractor should recognize as likely to create, during its progress, a peculiar, unreasonable risk of physical harm to* others, including employees of the independent subcontractor *unless special precautions are taken,* the general contractor owes a duty of care to see that such precautions are taken by the subcontractor. (*Woolen* v. *Aerojet General Corp.,* 57 Cal.2d 407, 410 et seq. [20 Cal.Rptr. 12, 369 P.2d 708]; Rest.2d Torts, §§ 413, 416, 427). Plaintiff's reliance upon this rule is misplaced. There was here no unreasonable risk of physical harm nor need of special precautions within the meaning of the rule. It is stated by Prosser (*op. cit.,* p. 486) 'the principle [of inherently dangerous activities—unreasonable risk of physical harm—need for special precautions] seems to be limited to work in which there is a high degree of risk in relation to the particular surroundings, or some rather specific risk or set of risks to those in the vicinity, *recognizable in advance* as calling for definite precautions. The emphasis is upon the "peculiar" character of the risk, and *the need for special, unusual care.* One who hires a trucker to transport his goods must, as a reasonable man, always realize that if the truck is driven at an excessive speed, or with defective brakes, some collision or other harm to persons on the highway is likely to occur. But this is not "inherent danger," as the courts have used the term; and for such more or less usual negligence the employer will not be liable.' "

We find this language controlling here. There was no physical precaution to be foreseen by Susanville; and to have done as plaintiffs contend it should have done, Susanville would have had to supervise the hiring as well as the operating practices of Bee & Bee. Such is not within the contemplation of the Restatement rule.

---

[6]Although the *Hollywood Turf* case made no reference to Restatement section 413 or section 416, it is obvious that it is actually analogous to the injured. man's employer furnishing a truck with defective brakes.

## II. Denial of Motion to Enlarge Opening Statement

█ Plaintiffs contend that the trial court erred when it denied their motion to enlarge their opening statement.

The contention fails. There was no suggestion in the opening statement that plaintiffs had not undertaken to state all of the facts which they expected to prove. (See *Palazzi* v. *Air Cargo Terminals, Inc., supra* at p. 194.) Indeed, plaintiffs do not now claim that their opening statement could be interpreted otherwise than as a full tender of the anticipated evidence. The statement itself ended with a representation by plaintiffs' counsel that "that is what the evidence will show, Your Honor, . . ." In fact plaintiffs' counsel conceded that the motion to reopen was not seriously intended to supply additional factual matter. When the motion was made, after the court had made its order granting the nonsuit, Susanville's counsel objected, but at the same time indicated that possibly an offer of proof could be made (see fn. 5, *ante* p. 400). Plaintiffs' counsel declined to make such an offer, saying "I made that motion just to protect the record, motion to reopen."

Additionally, as above stated, plaintiffs' motion to enlarge their opening statement was first made *after* the court had granted Susanville's motion for a nonsuit. Plaintiffs cite no authority for the proposition that a trial court abuses its discretion when it denies a motion to enlarge, which was not presented until after the court had ruled in favor of nonsuit motion. (Compare, *Palazzi* v. *Air Cargo Terminals, Inc., supra* at pp. 194-195; *Gallegos* v. *Union-Tribune Publishing Co.* (1961) 195 Cal.App.2d 791, 796 [16 Cal.Rptr. 185]; *Rodin* v. *American Can Co.* (1955) 133 Cal.App.2d 524, 534-535 [284 P.2d 530]; cf., *Kaplan* v. *Hacker* (1952) 113 Cal.App.2d 571, 573 [248 P.2d 464].)

The court's denial of the motion to enlarge was not abrupt. To the contrary, having once denied the motion, the court permitted plaintiffs to reopen and make the motion a second time, when it was again denied. On neither occasion did plaintiffs give the slightest indication as to the nature of any additional matters which they desire to state to the jury.

### Application to Produce Additional Evidence on Appeal

█ Invoking rule 23(b) of the California Rules of Court, plaintiffs applied to this court for leave to produce additional evidence on

appeal—namely, the written contract between Susanville and the United States Forest Service, and the written subcontract between Susanville and Bee & Bee. We deferred decision on plaintiffs' application pending our consideration of the merits.

Plaintiffs seek to introduce the subcontract between Susanville and Bee & Bee to show that there was no provision therein that Bee & Bee would take special precautions against the peculiar risk to which Addison was exposed. They assert that such fact would give plaintiffs a basis to proceed against Susanville under section 413 of the Restatement Second, Torts. Plaintiffs seek to introduce both written contracts to support their appellate claim that Susanville impliedly reserved the right to control the operative details of Bee & Bee's work, inasmuch as (1) the Forest Service contract allegedly contained certain language which plaintiffs deem supportive of such implied reservation and (2) the subcontract with Bee & Bee—according to plaintiffs' opening statement—required the road to be built pursuant to the specifications in the federal contract. Plaintiffs contend that the alleged implied reservation would show that Bee & Bee was an agent of Susanville, allowing plaintiffs to recover from Susanville on the theory of *respondeat superior.*

Plaintiffs' application under rule 23(b) must be denied. Quite apart from the fact that rule 23(b) is inapplicable where trial by jury is, as here, a matter of right (*People* v. *Pena* (1972) 25 Cal.App.3d 414, 421 [101 Cal.Rptr. 804]), plaintiffs cite no authority to support the proposition that evidence may be received on appeal to fill gaps in an opening statement.

As previously stated, plaintiffs took the express position in the trial court that section 413 of the Restatement Second, Torts was *not* applicable; and at no time in their opening statement did they ever refer to the particular provisions of the Forest Service contract, or the omission in the Bee & Bee subcontract, which they now seek to introduce through the rule 23(b) procedure. Nor did their opening statement ever suggest the implied reservation or agency relationship which they now allege. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 578, p. 4512.) Furthermore, none of these matters were mentioned by plaintiffs in connection with their motion to enlarge the opening statement.

Moreover, plaintiffs' application to produce evidence on appeal is for the purpose of obtaining a general reversal, which is an improper use of

rule 23(b). (*People* v. *Pena, supra* at p. 422.) Plaintiffs' application is denied.

The judgment is affirmed.

Regan, Acting P. J., and Evans, J., concurred.

A petition for a rehearing was denied May 13, 1975, and appellants' petition for a hearing by the Supreme Court was denied June 26, 1975. Richardson, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.