[Civ. No. 45202. Second Dist., Div. Two. Nov. 25, 1975.]

CLARENCE ANDERSON, Plaintiff and Appellant, v.
CHANCELLOR WESTERN OIL DEVELOPMENT
CORPORATION, Defendant and Respondent.

**COUNSEL**

Margolis, McTernan, Scope & Sacks and John T. McTernan, for Plaintiff and Appellant.

Archbald, Zelezny & Spray, Korman Dorsey Ellis and Maurice A. Greenwald for Defendant and Respondent.

**OPINION**

**COMPTON, J.**—Clarence Anderson, the plaintiff in a personal injury action brought against the Chancellor Western Oil Development Corporation (Chancellor), appeals from a judgment entered upon a jury verdict in favor of Chancellor.

The facts are not in dispute. Anderson on the day of the accident, April 20, 1971, was an experienced oil worker employed by Camay Drilling Company (Camay). Camay was an *independent contractor* engaged by Chancellor to drill an oil well on a lease located in Ventura

County. Anderson was a member of a five-man crew, each member of which had various duties connected with the drilling operation.

At the base of the derrick or rig commonly used in such drilling operations is a drilling floor, located above ground level, upon which members of the crew work. During various phases of the drilling operation it becomes necessary for members of the crew to be positioned at differing heights above the drilling floor. When so positioned the crew members stand on what is known as a "stabbing board," which is a plank approximately 20 feet long, 12 inches wide and 3 inches thick, reinforced with angle iron along the edges and by metal bands around its width. It weighs approximately 150 to 200 pounds. When in use the "stabbing board" rests on cross members of the derrick and it is the usual practice in the industry to fasten the ends of the "stabbing board" to prevent it from being dislodged as a result of vibration or being struck with other objects.

When it becomes necessary to raise or lower heavy objects, including the "stabbing board" itself, on the derrick, a "catline" is used. This device is simply a rope and cable suspended from a pulley near the top of the derrick.

At the time of the accident here the "stabbing board" was in position about 15 feet above the drilling floor but was not in use. The crew, including Anderson, were working at the level of the drilling floor and using the "catline" to move a portion of the drilling floor. One end of the "stabbing board" was fastened but the other was unfastened. The "catline" was positioned on "the wrong side" of the "stabbing board" and as the crew moved the drilling floor to one side the "catline" moved against the "stabbing board," dislodging it. The board fell, striking Anderson on the head.

Under the contract between Chancellor and Camay, Camay controlled all details of the work subject only to Chancellor's "right . . . to supervise and direct the work . . . to the sole end that the well may be protected and properly completed." Additionally, Camay agreed to indemnify Chancellor against any and all liability arising out of any claim or demand for personal injury to or death to Camay's employees and all other persons. Of course, Camay as Anderson's direct employer provided workmen's compensation benefits to its employees, including Anderson, for injuries sustained in the course of employment.

There is no claim that Chancellor was itself negligent nor that Chancellor had control of the premises or the employees of Camay so as to be a "statutory employer" under the provisions of former Labor Code section 6304[1] as that section read at the time of the accident.

Anderson's claim against Chancellor rests purely on the contention that Chancellor was vicariously liable for the negligence of Camay and Camay's employees, and if sustained would, because of the contract of indemnification, result in tort liability coming to rest on Camay, Anderson's direct employer.

Anderson on appeal makes a number of attacks on the judgment which can simply be grouped into two categories: (1) a claim that the evidence fails to support the judgment, and (2) that the court failed to properly define for the jury the rules governing the liability of the employer of an independent contractor.

As a general rule no liability is imposed upon a general contractor for injuries caused by the negligence of the subcontractor or an employee of the subcontractor. (Prosser, Law of Torts (3d ed.) p. 480.) However, it has long been held that a person may not insulate himself from liability to others in all cases by employment of an independent contractor. An exception to the rule exists for the employer's own negligence in the selection of an incompetent contractor or in the employer's direct control of or interference with the work. (*Caswell* v. *Lynch,* 23 Cal.App.3d 87 [99 Cal.Rptr. 880].) Exceptions to the rule of nonliability based on vicarious liability have generally been described in terms of "nondelegable duties." (*Van Arsdale* v. *Hollinger,* 68 Cal.2d 245 [66 Cal.Rptr. 20, 437 P.2d 508].)

"Nondelegable duties" in turn have been found to exist in "inherently dangerous" activity, but generally in connection with some primary basis of liability, such as an activity done under license of public authority (*Taylor* v. *Oakland Scavenger Co.,* 17 Cal.2d 594 [110 P.2d 1044]; *Van Arsdale* v. *Hollinger, supra*), negligence in hiring an incompetent contractor (*Risley* v. *Lenwell,* 129 Cal.App.2d 608 [277 P.2d 897]) or strict liability for blasting in a populated area (*Alonso* v. *Hills,* 95 Cal.App.2d 778 [214 P.2d 50]).

[1]Former Labor Code section 6304 provided that as used in Labor Code section 6400 requiring an employer to furnish an employee a safe place to work, the term "employer" included "every person having direction, management, control or custody of any employment, place of employment, or any employee." By amendment in 1972, this language was deleted.

"The rule of nondelegability is the broad and inclusive concept, while the supposedly separate doctrine of inherent danger is merely one of several bases for finding a justification for refusing to permit delegation." (44 Cal.L.Rev. 762, at p. 768.)

The inherently dangerous work exception was developed in the earlier cases to protect third persons. (*Houghton* v. *Loma Prieta Lumber Co.,* 152 Cal. 500 [93 P. 82]; *Bedford* v. *Bechtel Corp.,* 172 Cal.App.2d 401 [342 P.2d 495]; *Ferrel* v. *Safway Steel Scaffolds,* 57 Cal.2d 651 [21 Cal.Rptr. 575, 371 P.2d 311]; also see 13 Hastings L.J. 147.) As was stated in 44 Cal.L.Rev. 762, at page 764: "In each case in which liability has been predicated on the inherent danger exception, . . . there is also some special relationship between the employer and the injured party which can be characterized as something more than simply that the plaintiff was foreseeable."

The latest statement of the general rules is set forth in Restatement Second of Torts, sections 413 and 416. Section 413 is considered to cover the direct negligence of the employer and section 416 deals with vicarious liability in the employment of an independent contractor. ■ The case at bar deals only with the principles of section 416 which provides: "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

The California Supreme Court in *Woolen* v. *Aerojet General Corp.,* 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708], expanded the concept by holding that "others" could include employees of the independent contractor. However, in that case the peculiar risk was that of an explosion in a confined area and the general contractor exercised some control over the activity by specifying the use of a paint which had explosive properties.

■ Thus the rule which imposes vicarious liability upon the employer of an independent contractor for failure to take special precautions to prevent a peculiar risk is best stated in terms of "direct consequences," i.e., the peculiar risk must be one which can be foreseen as a direct consequence of the work being done. The court must find

something in the circumstances of the work or the relationship of the parties which creates a nondelegable duty of care to the injured party.

"It is difficult to suggest any criterion by which the non-delegable character of such duties may be determined, other than the conclusion of the courts that the responsibility is so important to the *community* that the employer should not be permitted to transfer it to another." (Prosser, Law of Torts (3d ed.) p. 484.) (Italics added.)

■ A concomitant of the "direct consequences" approach to the problem is the rule that liability of the employer of an independent contractor does not extend to the collateral negligence on the part of the independent contractor in the performance of the operative details of the work. (Harper & James, The Law of Torts, § 26.11.)

■ An owner of land or a general contractor is not liable for injuries resulting from defective equipment used by an independent contractor unless that equipment was supplied, selected, or controlled by him. (*McDonald* v. *Shell Oil Co.,* 44 Cal.2d 785 [285 P.2d 902].)

The rule is well stated in *Addison* v. *Eagle Lake Lumber Co.,* 47 Cal.App.3d 394, at page 404 [120 Cal.Rptr. 737], citing Prosser, Law of Torts (3d ed.) page 486, " ' "[T]he principle [of inherently dangerous activities—unreasonable risk of physical harm—need for special precautions] seems to be limited to work in which there is a high degree of risk in relation to the particular surroundings, or some rather specific risk or set of risks to those in the vicinity, *recognizable in advance* as calling for definite precautions. The emphasis is upon the 'peculiar' character of the risk, and *the need for special, unusual care.*" ' "

In analyzing the situation in any given case in order to determine whether the risk was that type of "peculiar" risk which would prevent delegation and thus constitute an exception to the rule of nonliability, the historical development of the law should be considered, and it must be kept in mind that the inclusion of the employees of the independent contractor in the class of persons to whom liability may flow is a departure from the original objective of the exception to the rule of nonliability.

The liberality or strictness with which "peculiar risk" is interpreted is affected by the relationship of the parties and the policies of the law toward extending protection. The determination of what is an operative

detail as opposed to a "peculiar risk" must be made in light of the relationship between the activity and the person injured.

■ The relationship here between Anderson, Camay and Chancellor is such that if Camay's negligence is imputed to Chancellor who in turn can seek indemnification from Camay, the result will be a circumvention of the well-established rule that an employee's remedy against his employer for industrial injury is exclusively one for benefits under the workmen's compensation law. (Lab. Code, § 3601; *Balido* v. *Improved Machinery, Inc.,* 29 Cal.App.3d 633 [105 Cal.Rptr. 890].)

As was stated in *West* v. *Guy F. Atkinson Constr. Co.,* 251 Cal.App.2d 296, at page 301 [59 Cal.Rptr. 286]: "Why should the employee of the independent contractor recover benefits greater than the employee of the general contractor? True, case law has made him the beneficiary of a windfall and the owner-general contractor the insurer of payment of that windfall in the 'nondelegable liability' cases. Thus far the rule has been limited to the 'franchise,' 'permittee,' 'extrahazardous situation' and other 'special relationship' cases, or the liability has been written into some statute. We see no logical reason to enlarge the existing liability by case law."

In *Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d 245, at page 253, some of the considerations which led to the departure from the rule of nonliability are stated to be ". . . that the enterprise, notwithstanding the employment of the independent contractor, remains the employer's because he is the party primarily to be benefited by it, that he selects the contractor, is free to insist upon one who is financially responsible, and to demand indemnity from him, that the insurance necessary to distribute the risk is properly a cost of the employer's business, and that the performance of the duty of care is of great importance to the *public.*" (Italics added.) We do not believe that the court in citing the right to demand indemnity from the subcontractor as being a consideration for imposing liability on the employer of the subcontractor had in mind the circular liability which results where an employee of the subcontractor is the injured party.[2]

---

[2]Where injury to a third party is involved, imposing vicarious liability on the nonnegligent employer or permitting him to obtain indemnification from the negligent subcontractor seems equitable.

As a practical matter, the general contractor with the greater bargaining power can always extract from the subcontractor the right of indemnification. Where the injured party is an employee of the subcontractor, the exclusivity of workmen's compensation benefits is thus circumvented. Thus employers who by the nature of their business always

In situations such as the case at bar where the strong public and legal policy favors exclusivity of the workmen's compensation remedy and where the risk was solely to Camay's employees who were in turn the very persons involved in using the "stabbing board" and the "catline," strict interpretation of the concept of "peculiar risk" and adherence to the basic rule of nonliability is indicated.

We can think of some risks peculiar to the drilling of oil wells, such as explosion, fire or disturbance of ground support where specific precautions are required. On the other hand, the use of a scaffold (and that is all that a "stabbing board" is) does not constitute an inherently dangerous or peculiar activity (*Hard* v. *Hollywood Turf Club,* 112 Cal.App.2d 263 [246 P.2d 716]) nor is the use of a "catline" peculiar or inherently dangerous. It was the combined use of the "stabbing board" and the "catline" which caused the injury. The taking of precautions by Chancellor in order to guard against injury to Camay's employees from these activities would have required Chancellor to employ a full-time inspector to check the positioning and securing of the "stabbing board" at each move and to constantly observe the positioning of the "catline." Under the circumstances it had no such duty.

The falling of a board caused by the simple failure to fasten one end of the board prior to moving the "catline" is not a peculiar risk, nor is the fastening of both ends of such a board a special unusual precaution. These were operative details which Chancellor had a right to assume would be performed in a nonnegligent fashion.

In sum, the duty to fasten the board to prevent its falling on the workmen who used it and dislodged it was not, in terms of inherent danger or in terms of the relationship between the parties, a nondelegable one which would vicariously impose liability on the nonnegligent employer. The duty or responsibility was not of great importance in affording protection to the community or public.

The instructions which were given to the jury were all correct statements of law, however, we need not further discuss Anderson's contentions concerning them, since we have concluded that on the

---

occupy the role of an independent contractor are denied the benefit of the limited and certain liability which other employers enjoy under the workmen's compensation law, even though their activities may be no more hazardous than those of other industrial employers. Conversely, to affix liability without indemnification is to place an onerous burden on a fault-free employer.

undisputed facts and as a matter of law there was no liability on the part of Chancellor. Hence, there was no factual issue for the jury to resolve.

The judgment is affirmed.

Fleming, Acting P. J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 28, 1976.