Opinion
 

 BROWN (G. A.), P. J.
 

 Plaintiff, E. Alan Stark, appeals from a summary judgment in favor of the defendant, Weeks Real Estate, a corporation (owner) in this action for damages for personal injuries. The essential
 
 *967
 
 facts are not in dispute, (1a) The sole issue is whether the plaintiff, an employee of an independent contractor, can maintain this suit against the owner under the “peculiar risk” exception to the general rule that one who employs an independent contractor is not liable for injuries caused by the negligence of the contractor.
 
 [1]
 

 Plaintiff and appellant, E. Alan Stark, was a carpenter employed by the construction firm owned in partnership by Billy Ray Glenn and Robert Weeks (hereinafter contractor). Glenn had a contractor’s license. While in the course and scope of his employment as a carpenter on June 24, 1974, plaintiff was injured by a power saw.
 

 Respondent, Weeks Real Estate (hereinafter owner), is a corporation engaged in the business of real estate development. The sole shareholder and president is Robert Weeks.
 

 Prior to the accident, owner and contractor entered into a contract for the construction of wood frame homes on owner’s property. Pursuant to the contract, Billy Glenn managed the construction activities. Robert Weeks, although not directly involved in the construction work, periodically visited the construction site. He averred in his declaration in support of the motion for summary judgment:
 

 “All material and equipment, including circular saws, used in the construction of the home and all construction costs, including wages, were paid by the partnership [contractor]. . . .
 

 “I have never personally worked in construction and have no personal knowledge of construction practices and construction safety. ... I am not familiar with the proper operation of construction tools, including electric circular saws.
 

 “My only involvement in the management of the partnership is to check the building plans to make sure that in my judgment, the house is attractive to prospective purchasers such as checking the size of the
 
 *968
 
 family room for its aesthetic properties. I visit the home construction sites only occasionally principally for the purpose of finding Mr. Ray Glenn. ... I have no personal knowledge that circular saws on partnership home construction sites were used with the guards either wedged or wired in an-open position as the plaintiff Stark apparently contends. In fact, prior to the plaintiff Stark’s accident I had never been close to a circular saw and was entirely unaware of what guards, if any, they were equipped with.” These allegations were not disputed.
 

 On June 24, 1974, plaintiff was engaged in the building of one of the homes contracted for by owner. This work involved the daily use of a hand-held circular power saw, commonly referred to as a skil-saw. Those saws are equipped with a spring-activated blade guard, which prevents exposure of the blade except while the saw is actually cutting. The employees of contractor regularly rendered the guards on the circular power saws inoperative. Initially this was done with wedges of wood. Later a small hole was drilled in the saw so that wires could be used to keep the guards open. Whenever Billy Glenn observed that the saws were being operated without guards he demanded that the employees remove the wedges or wires. The saws were owned and furnished by the contractor to workmen such as plaintiff.
 

 On the day of the accident plaintiff prepared to cut a piece of lumber which was approximately 81 inches from the floor with a skil-saw. Plaintiff stood on a sawhorse and leaned against a wall. The guard on the particular saw he was using had been wired open. As he was making the cut, the wall against which he was leaning wobbled, causing him to lose his balance and fall from the sawhorse. As he fell, his arm came in contact with the unguarded blade, causing him serious injuries.
 

 Aceves
 
 v.
 
 Regal Pale Brewing Co.
 
 (1979) 24 Cal.3d 502 [156 Cal.Rptr. 41, 595 P.2d 619] is the most recent expression from the Supreme Court on this subject and succinctly summarizes the legal principles applicable to the “peculiar risk” doctrine.
 

 “The applicable law on the peculiar risk doctrine is stated in sections 413 and 416 of the Restatement Second of Torts. (See
 
 Woolen
 
 v.
 
 Aerojet General Corp.
 
 (1962) 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708];
 
 Ferrel
 
 v.
 
 Sajway Steel Scaffolds
 
 (1962) 57 Cal.2d 651 [21 Cal.Rptr. 575, 371 P.2d 311];
 
 Van Arsdale
 
 v.
 
 Hollinger, supra,
 
 68 Cal.2d at p. 254.) Section 416 states that ‘One who employs an independent contractor to do work which the employer should recognize as likely to create during its
 
 *969
 
 progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.’ Section 413 differs from section 416 only to the extent that it imposes direct liability on the employer when he has made no provision in the contract or otherwise for the taking of required precautions.[
 
 2
 
 ]
 
 (Griesel
 
 v.
 
 Dart Industries, Inc., supra,
 
 23 Cal.3d atpp. 585-586; Rest.2d Torts, § 416, com. c.)
 

 “ ‘A peculiar risk is a risk which is peculiar to the work to be done and arises out of its character or the place where it is to be done, and against which a reasonable person would recognize the necessity of taking special precautions.’
 
 (Griesel
 
 v.
 
 Dart Industries, supra,
 
 23 Cal.3d at p. 586; Rest.2d Torts, §§ 413, com. b., 416, com. b.) It is something other than the ordinary and customary dangers which may arise in the course of the work or of normal human activity. ‘ “Peculiar” does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself.’[
 
 3
 
 ] (Rest.2d Torts, § 413, com. b.)
 

 “The determination of whether a danger is recognizable requires . consideration of the employer’s knowledge and experience in the field of work to be done. (Rest.2d Torts, § 413, com. f;
 
 Widman
 
 v.
 
 Rossmoor Sanitation, Inc., supra,
 
 19 Cal.App.3d at pp. 746-747.) ‘[A]n inexperienced widow employing a contractor to build a house is not to be expected to have the same information, or to make the same inquiries, as to whether the work to be done is likely to create a peculiar risk of physical harm to others, or to require special precautions, as is a real estate development company employing a contractor to build the same house.’ (Rest.2d Torts, § 413, com. f.)
 

 
 *970
 
 ’’Liability under the peculiar risk doctrine does not extend to so-called ‘collateral’ or ‘casual’ negligence on the part of the contractor or his employees.
 
 (Van Arsdale
 
 v.
 
 Hollinger, supra,
 
 68 Cal.2d at p. 252.) ‘Casual’ or ‘collateral’ negligence has sometimes been described as negligence in the operative detail of the work, as distinguished from the general plan or method to be followed. Although this distinction can frequently be made, since negligence in the operative details will often not be within the contemplation of the employer when the contract is made, the distinction is not essentially one between operative detail and general method. ‘It is rather one of negligence which is unusual or abnormal, or foreign to the normal or contemplated risks of doing the work, as distinguished from negligence which creates only the normal or contemplated risk.’ (Rest.2d Torts, § 426, com. a; see Prosser, Law of Torts, 4th ed. (1971) pp. 474-475.)”
 
 (Id.,
 
 at pp. 508-510.)
 

 Because the abstract definition of the doctrine is elusive in practical application its contours can best be determined by example. Examples of work which has been held to create peculiar risk of physical harm absent special precautions are: The danger of being struck by a wall being knocked down on a demolition job
 
 (Aceves
 
 v.
 
 Regal Pale Brewing Co., supra);
 
 the risk of a cave-in while working in a nine-foot deep unshored and unsloped trench
 
 (Griesel
 
 v.
 
 Dart Industries, Inc.
 
 (1979) 23 Cal.3d 578 [153 Cal.Rptr. 213, 591 P.2d 503]; see also
 
 Widman
 
 v.
 
 Rossmoor Sanitation, Inc.
 
 (1971) 19 Cal.App.3d 734 [97 Cal.Rptr. 52]); eradicating white line markings on the street with the risk a motorist would injure a workman
 
 (Van Arsdale
 
 v.
 
 Hollinger
 
 (1968) 68 Cal.2d 245 [66 Cal.Rptr. 20, 437 P.2d 508]); repairing a metal tank from the inside by forcing buckled metal outward with the risk that the metal would spring inward and injure a workman
 
 (Ferrel
 
 v.
 
 Safway Steel Scaffolds
 
 (1962) 57 Cal.2d 651 [21 Cal.Rptr. 575, 371 P.2d 311]); painting the inside of a tank with the risk of an explosion because of inadequate ventilation
 
 (Woolen
 
 v.
 
 Aerojet General Corp.
 
 (1962) 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708]; see also
 
 McDonald
 
 v.
 
 City of Oakland
 
 (1965) 233 Cal.App.2d 672 [43 Cal.Rptr. 799]); cement work on a bridge 20 feet high with no scaffolding or railing—worker fell from bridge
 
 (Fonseca
 
 v.
 
 County of Orange
 
 (1972) 28 Cal.App.3d 361 [104 Cal.Rptr. 566]); erecting and cross-girdering 30-foot steel column for a water tower without safety equipment to keep plaintiff from falling off tower
 
 (Stilson
 
 v.
 
 Moulton-Niguel Water Dist.
 
 (1971) 21 Cal.App.3d 928 [98 Cal.Rptr. 914]); building bridge over high voltage wires—worker injured when boom of crane touched wire
 
 (Walker
 
 v.
 
 Capistrano Saddle Club
 
 (1970) 12 Cal.App.3d 894 [90 Cal.Rptr. 912]); building concrete wall and floor without railings to a height of 10 feet
 
 *971
 
 with the risk that a workman might fall or be pushed from the wall
 
 (Morehouse
 
 v.
 
 Taubman Co.
 
 (1970) 5 Cal.App.3d 548 [85 Cal.Rptr. 308]); backing a loaded truck on a construction project without a warning device with the risk that worker might be run down
 
 (Anderson
 
 v.
 
 L. C. Smith Constr. Co.
 
 (1969) 276 Cal.App.2d 436 [81 Cal.Rptr. 73]).
 

 All of these cases involved risks which fall well within the parameters of the peculiar or special risk doctrine as defined by the Restatement and the
 
 Aceves
 
 case. As was stated by the Supreme Court in
 
 Aceves, supra,
 
 the peculiar risk is one which is peculiar to the work to be done and arises out of its character and the place where it is to be done and is something other than an ordinary and customary danger which may arise in the course of the work or of normal human activity. It has reference only to a special, recognizable danger arising out of the work itself.
 

 As this court stated in
 
 Holman
 
 v.
 
 State of California
 
 (1975) 53 Cal.App.3d 317, 328 [124 Cal.Rptr. 773]: “While it is not essential that the work which the contractor is employed to do be in itself an extra hazardous or abnormally dangerous activity, or that it involves a high degree of risk to those in the immediate vicinity, it must involve some special hazard resulting from the nature of the work done which in turn calls for special precautions.” The Restatement further refines the application of the doctrine by removing from its ambit certain routine types of negligent conduct. Comment b of Restatement Second of Torts, section 413, states in part: “b.
 
 Peculiar risk and special precautions.
 
 It is obvious that an employer of an independent contractor may always anticipate that if the contractor is in any way negligent toward third persons, some harm to such persons may result. Thus one who hires a trucker to transport his goods must, as a reasonable man, always realize that if the truck is driven at an excessive speed, or with defective brakes, some collision or other harm to persons on the highway is likely to occur. This Section has no reference, to such a general anticipation of the possibility that the contractor may in some way be negligent. It is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work. Such precautions are the responsibility of the contractor; and if the employer has exercised reasonable care to employ a contractor who is competent and careful (see § 411), he is not required to provide, in the contract or otherwise, that the contractor shall take them.” Comment d of Restatement Second of Torts, section 416, states that: “A
 
 *972
 
 ‘peculiar risk’ is a risk differing from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community. It must involve some special hazard resulting from the nature of the work done, which calls for special precautions. (See § 413, Comment
 
 b.)
 
 Thus if a contractor is employed to transport the employer’s goods by truck over the public highway, the employer is not liable for the contractor’s failure to inspect the brakes on his truck, or for his driving in excess of the speed limit, because the risk is in no way a peculiar one, and only an ordinary precaution is called for. But if the contractor is employed to transport giant logs weighing several tons over the highway, the employer will be subject to liability for the contractor’s failure to take special precautions to anchor them on his trucks.”
 

 We have found no case wherein the peculiar or special risk doctrine has been extended to injuries caused by the negligent use or misuse of hand tools by the independent contractor or its employees, and we do not believe that the risk involved from that type of activity is the type of risk intended to be covered by the doctrine. The foregoing authorities establish that the peculiar or special risk of harm must be inherent in the work itself and arise out of its character. The doctrine does not apply to injuries resulting from the negligence of the independent contractor for failing to take those precautions as to the operative details of the work which a careful contractor would take in the performance of the work, such as the failure to use reasonable care to insure the proper condition and use of hand tools which the contractor has provided to its workers. These are ordinary and customary risks apart from the nature of the work itself. It is obvious that every owner who employs an independent contractor can anticipate that employees of the independent contractor may misuse customary hand tools, thus endangering themselves and third parties. Such a risk is always present. There is nothing peculiar or special about it. On the contrary it is a usual, common and anticipatable danger in the routine performance of the work, against which the owner is not required to take special precautions.
 
 (Addison
 
 v.
 
 Susanville Lumber, Inc.
 
 (1975) 47 Cal.App.3d 394 [120 Cal.Rptr. 737].) If this type of risk were held to be a special or peculiar risk within the meaning of the doctrine, then one would be hard put to imagine any type of negligence of the contractor or his employees for which the owner could not be held liable, and we do not think it was the intention of either the authors of the Restatement or the Supreme Court to entirely eliminate the insulation of the owner from liability for acts of an independent contractor.
 

 
 *973
 
 Further, in this case the contractor supplied the skil-saw to employees, including plaintiff. In
 
 Holman
 
 v.
 
 State of California, supra,
 
 53 Cal.App.3d 317, 330, we held that “. . . an owner is not liable for injuries resulting from defective equipment used by the contractor unless the owner supplied the equipment or had the privilege of selecting it or the materials out of which it is made, or unless he exercised active control over the operations of the equipment. [Citation.]” We explained that under those circumstances “the injury is caused by a risk apart from the work itself [grading and surfacing the highway]. . . .” The stated principle applies to small hand tools supplied by the contractor with special force and validity. It would be entirely impracticable, unreasonable and expensive to expect an owner to set up a system to monitor the manner in which tools are used by workmen and guard against misuse or negligent use of such tools by workmen in day-to-day operations on the job. (See
 
 McDonald
 
 v.
 
 Shell Oil Co.
 
 (1955) 44 Cal.2d 785 [285 P.2d 902];
 
 Anderson
 
 v.
 
 Chancellor-Western Oil Dev. Corp.
 
 (1975) 53 Cal.App.3d 235 [125 Cal.Rptr. 640];
 
 West
 
 v.
 
 Guy F. Atkinson Constr. Co.
 
 (1967) 251 Cal.App.2d 296 [59 Cal.Rptr. 286].)
 

 Applying the foregoing principles to the uncontradicted facts in the instant case, the owner was entitled to judgment in his favor as a matter of law. (Code Civ. Proc., § 437c;
 
 Stationers Corp.
 
 v.
 
 Dun & Bradstreet, Inc.
 
 (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) The trial court did not err in granting the owner’s motion for summary judgment.
 

 The judgment is affirmed.
 

 Franson, J., and Hopper, J., concurred.
 

 [1]
 

 The summary judgment was also granted as to another cause of action which alleged that the owner intentionally caused the contractor to use unsafe equipment. Since plaintiff has not argued that the court erred in granting the summary judgment as to this cause of action, this issue is deemed to have been abandoned.
 
 (Conner
 
 v.
 
 Dart Transportation Service
 
 (1976) 65 Cal.App.3d 320, 323 [135 Cal.Rptr. 259].)
 

 [2]
 

 In a footnote at this point the court states: “The word ‘others’ as used in sections 413 and 416 of the Restatement Second of Torts clearly includes an employee of an independent contractor who, like a third party, may sue the contractor’s employer under the peculiar risk doctrine. (See
 
 Van Arsdale
 
 v.
 
 Hollinger, supra,
 
 68 Cal.2d at p. 254;
 
 Woolen
 
 v.
 
 Aerojet General Corp., supra,
 
 57 Cal.2d at p. 411.)”
 

 [3]
 

 In a footnote at this point the court states: “2We use the term ‘peculiar risk’ because that is the terminology used in the Restatement Second of Torts and in our prior cases. We note, however, that the term ‘special risk’ might be a more apt description of the doctrine.”