[Civ. No. 46557. Second Dist., Div. Five. May 17, 1976.]

MARGARET SMITH, Plaintiff and Appellant, v.
LUCKY STORES, INC., Defendant and Respondent.

**COUNSEL**

Robert L. Porter for Plaintiff and Appellant.

Martin & Stamp and Lloyd V. Stamp for Defendant and Respondent.

Haight, Lyon, Smith & Dickson and Roy G. Weatherup as Amici Curiae.

**OPINION**

**KAUS, P. J.**—Plaintiff Margaret Smith appeals from a judgment after a court trial in favor of defendant Lucky Stores, Inc.

## FACTS

We rely chiefly on the statement of the undisputed facts in appellant's brief.

Defendant Lucky Stores hired QRS Corporation,[1] as an independent contractor, to remove a sign from a store named "ARDENS," owned by defendant. The letters spelling out "ARDENS," were each about 6 feet high and 2½ feet wide and weighed between 50 and 60 pounds.

Two QRS employees parked their truck with its crane and other sign moving equipment on the street by the curb directly in front of defendant's store. The QRS men set up a 28-foot metal ladder across the sidewalk, up to the marquee above the store entrance. Under the 28-foot ladder they set up a smaller wooden ladder in its extended or A-position. The smaller ladder was intended as a warning to persons using the sidewalk. However, no warning signs were posted and no barricades or ropes set up.

A crane was mounted on the QRS truck from which the two workmen extended a boom up the parapet wall where the ARDENS sign was located. One workman unbolted the letter A and hooked it onto a steel cable pulley attachment on the crane. The worker on the ground operated the crane controls to lower the sign. When the letter A was lowered to the sidewalk, the QRS employee on the ground unhooked the cable and lifted or dragged the sign over to the truck. The letter A was then loaded onto the truck. The letter R was then removed in the same manner. The QRS employee then dragged the letter R across the sidewalk and leaned it against the truck.

At about this point, plaintiff, about 79 years old, was walking on the street and passed in front of defendant's store. The QRS worker momentarily—and negligently—released his hold on the letter R sign

---

[1] QRS Corporation, a defendant below, is not directly involved in this appeal. Plaintiff settled her claim against QRS for $6,866. QRS remained as a cross-defendant in defendant's cross-complaint for indemnity. The trial court, having concluded that defendant was not liable to plaintiff, also concluded that the issues involved in defendant's cross-complaint against QRS "are moot, . . ." QRS, however, filed an amicus brief for the purpose of obtaining a ruling that if the judgment in favor of defendant Lucky is reversed, it may not proceed against QRS. The issues raised by QRS are in any event not before this court; however, because we affirm the judgment in favor of defendant Lucky, they remain moot.

while reaching for some wire. A gust of wind blew the sign over onto plaintiff, injuring her seriously.

## DISCUSSION

It has often been noted that today a court's statement of the general rule of nonliability for the negligence of an independent contractor is usually just a springboard for announcing that in the case under consideration it does not apply. (*Widman* v. *Rossmoor Sanitation, Inc.*, 19 Cal.App.3d 734, 743 [97 Cal.Rptr. 52]; *Van Arsdale* v. *Hollinger*, 68 Cal.2d 245, 252 [66 Cal.Rptr. 20, 437 P.2d 508].) ■ In this case, too, the trial court stated—and no one disagrees—that defendant would have been liable for the negligence of QRS, an independent contractor, had plaintiff been injured while the letter was being lowered to the ground. The court found, however, that once the letter had reached the pavement and rested against the truck, defendant's responsibility for the negligence of QRS's employee had ceased. We agree.

The theories on which liability for the negligence of an independent contractor may be based and the particular situations to which the not-so-general rule applies, were extensively reviewed and analyzed by the Supreme Court in *Maloney* v. *Rath*, 69 Cal.2d 442, 446-448 [71 Cal.Rptr. 897, 445 P.2d 513, 40 A.L.R.3d 1], and *Van Arsdale* v. *Hollinger, supra*, 68 Cal.2d at pages 250-254. In brief, it appears that California law is generally in accord with the Restatement Second of Torts, which sets forth, in sections 416 through 429, the many, partly overlapping, recognized exceptions to the rule of nonliability.[2]

Plaintiff's problem in this case is not the existence of a theory under which defendant would have been liable to her, had she been injured while QRS's equipment was lowering the letter from defendant's store across the sidewalk onto the ground.[3] The trouble with her case is that it

---

[2]Sections 410 through 415 contain additional exceptions dealing with situations where the employer of the independent contractor is, himself, at fault.

[3]Plaintiff relies on the following sections of the Restatement of Torts, Second: Section 416: ("Work Dangerous in Absence of Special Precautions"), section 417: ("Work Done in Public Place"), section 422: ("Work on Buildings and Other Structures on Land"); section 425: ("Repair of Chattel Supplied or Land Held Open to Public as Place of Business"); section 427B: ("Work Likely to Involve Trespass or Nuisance").

She probably could have cited other sections such as section 427 ("Negligence as to Danger Inherent in the Work"). Plaintiff, of course, also relies on the California authorities such as *Maloney* v. *Rath, supra*, and *Van Arsdale* v. *Hollinger, supra*, which recognize and apply the Restatement.

is a textbook example of "collateral" or "casual" negligence by an employee of the independent contractor for which the employer is universally held to be not responsible.[4] This doctrine rests on the premise that where harm results from a risk other than the one which makes the employer liable for the negligence of the independent contractor, the reason for imposing such liability no longer applies. Or, as is stated in 2 Harper and James, The Law of Torts, section 26.11, page 1410: "Where the duty is nondelegable because of the inherently dangerous character of the work, conduct is 'collaterally negligent' when it does not involve the risks that made the work peculiarly dangerous."[5]

The concept that there must be a relationship between the particular act of negligence of the independent contractor and the peculiar risk which justifies a departure from the general rule of nonliability, was recognized in California at least 60 years ago. In *Schmidlin* v. *Alta Planing Mill Co.,* 170 Cal. 589 [150 P. 983], employees of an independent contractor were using an empty scaffold to raise a paint bucket to the top of a building. It fell and struck the plaintiff. Conceding, for the sake of argument, that the character of the work being done was "inherently dangerous," a judgment of nonsuit in favor of the employer was nevertheless affirmed because the painters' negligence with respect to the manner of raising the bucket "formed no attribute, part, or characteristic of the work itself." (*Ibid.,* at p. 592.)[6]

---

[4]The Restatement's rule concerning collateral negligence in section 426 reads in relevant part as follows:

"[A]n employer of an independent contractor, unless he is himself negligent, is not liable for physical harm caused by any negligence of the contractor if

"(a) the contractor's negligence consists solely in the improper manner in which he does the work, and

"(b) it creates a risk of such harm which is not inherent in or normal to the work, and

"(c) the employer had no reason to contemplate the contractor's negligence when the contract was made."

The comment to section 426 states that the distinction between negligence of the independent contractor and collateral negligence is "one of negligence which is unusual or abnormal, or *foreign to the normal or contemplated risks of doing the work,* as distinguished from negligence which creates only the normal or contemplated risk." (Italics added.)

[5]In Prosser on Torts (4th ed. 1971) section 71, page 475, the author defines collateral negligence as follows: "The test of 'collateral' negligence, therefore, appears to be . . . *its disassociation from any inherent or contemplated special risk* which may be expected to be created by the work." (Italics added.)

[6]Much more recently, the rule was stated and applied in *Holman* v. *State of California,* 53 Cal.App.3d 317, 330 [124 Cal.Rptr. 773]: "In all of the cases which have imposed a

Similarly, the manner in which the QRS employee held onto the letter after it reached the ground was totally unrelated to any aspect of QRS' work which would have justified a departure from the general rule of nonliability, had plaintiff been injured as a result thereof.[7]

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

---

vicarious liability under section 416, there is a direct causal relationship between a peculiar risk inherent in the work to be performed and the plaintiff's injuries. It is the foreseeability of that special risk which justifies the imposition of liability. [Citations.] [¶] On the other hand, where the injury is caused by a risk apart from the work itself, such as a defect in the equipment furnished by the contractor, the employer is not vicariously liable."

[7]The trial court noted the following analogy: "[I]f, for example, [defendant] was a store that had called on United Parcel Service to come and pick up for delivery, we'll say a piece of sheet metal, six foot by two foot by whatever gauge it is, and the parcel driver walked it out of the front door of the store, placed it against the side of his van, the wind flipped it, and it landed on the back or into the side of a pedestrian walking by, would you say then that they were liable?" Plaintiff's attorney found the analogy factually "not apt"; we disagree.