[Civ. No. 37735. First Dist., Div. Four. Aug. 23, 1976.]

MICHEL & PFEFFER, Plaintiff and Respondent, v.
OCEANSIDE PROPERTIES, INC., et al., Defendants and Appellants.

**COUNSEL**

Miller, Morton, Caillot & Nevis and David L. Nevis for Defendants and Appellants.

Cooley, Godward, Castro, Huddleson & Tatum, Paul A. Renne and Kenneth J. Adelson for Plaintiff and Respondent.

## OPINION

**CALDECOTT, P. J.**—Williams & Burrows (contractor), Fireman's Fund American Insurance Companies (surety) and Oceanside Properties, Inc. (owner) appeal from a judgment in favor of respondent Michel & Pfeffer (subcontractor). Michel & Pfeffer commenced this action against appellants for payment on a bond, foreclosure of a mechanics lien and common count based on work performed. The judgment ordered the contractor and surety to pay respondent the sum of $47,744.55 prior to July 27, 1975, or upon the earlier sale of the property, giving respondent a lien upon the property in the amount of the sum due, and directing foreclosure of the owner's interest in the property if judgment was not satisfied within time specified.

I

Appellants contend that the trial court erred in construing the two subcontracts (between respondent and Williams & Burrows) to require payment of the final 15 percent retention within two years of the completion date of the project, July 27, 1973, or upon sale of the building, whichever occurs first.

It is undisputed that the sum of $47,744.55 is owed to respondent under the contracts. The trial court found that: "9. On or about August 20, 1970, defendant W & B entered into a written agreement with defendant Oceanside Properties, and entities identified as International Environmental Dynamics [I.E.D.], Continental Mortgage Investors [C.M.I.] and Mortgage Consultants, Inc. [M.C.]. Included in said agreements was a Promissory Note payable from IED to W & B in the sum of $680,000.00, secured by a Deed of Trust on the IED Building complex. Under the terms of said note, the sum of $680,000.00 is to be paid within two (2) years from the date of completion or upon sale of the real property, if said sale occurs earlier. [¶] 10. The sum of $47,744.55 which is owing to plaintiff is payable in accordance with the provisions of the agreements referred to in Paragraph 8,[1] together with any amendments thereto. [¶] 11. The payable date of the $47,744.55 is on or before two (2) years from July 27, 1973 or, upon sale of the property if said sale occurs earlier, and interest shall accrue on said sum at the rate of 10% from July 27, 1973 until paid."

---

[1] This is apparently a clerical error, as paragraph 8 does not refer to any agreements; the reference is undoubtedly to paragraph 9.

■ The findings do not indicate whether the court found the various contracts and provisions regarding payment of the amount owed to respondent unambiguous, and therefore relied solely on the language of the instruments, or whether it found the documents unclear and therefore considered extrinsic evidence in reaching its conclusions. Respondent asserts that the court construed the agreements in light of allegedly conflicting extrinsic evidence; appellants urge that the language was clear, and that in any event uncontradicted extrinsic evidence required a contrary result.

"The situation presented is one in which we are permitted to examine the written opinion [intended decision] of the trial court, . . . in order to learn the process by which the judgment was reached. [Citations.] . . . 'We may consider the opinion of the trial judge for the purpose of understanding and interpreting the findings. . . .' " (*Wechsler* v. *Capitol Trailer Sales,* 220 Cal.App.2d 252, 262 [33 Cal.Rptr. 680].) ■ The "Intended Decision" of the court states: "The Court finds that the sum of $47,744.55 is owing from defendants Williams & Burrows and its Surety Fireman's Fund American Insurance Companies. The Court finds that said sum is payable *in accordance with* [italics in original] the contract and amendments thereto, between defendant Williams & Burrows, I.E.D., C.M.I., M.I. and Oceanside Properties, Inc., and particularly in accordance with the terms of the Promissory Note and Trust Deed dated August 20, 1970, payable from I.E.D. to Williams & Burrows, Inc., in the sum of $680,000.00. [¶] The Court finds therefore that the 'payable' date of the $47,744.55 is on or before two years from July 27, 1973 (payment to be accelerated by earlier sale of the real property covered by the Deed of Trust securing said note) and that interest shall accrue at ten percent per annum from July 27, 1973 until paid."

It thus appears that the court considered the contractual language unambiguous, and construed it without regard to extrinsic evidence. ■ "Although the question whether a contract is or is not ambiguous or uncertain is a matter of determination, in the first instance, by the trial court, the question is one of law, and the trial court's determination is not binding on an appellate court." (*Wechsler, supra,* 220 Cal.App.2d 252, at p. 263.)

■ The parties agree that the controlling language in the contracts between respondent and Williams & Burrows is "that the final fifteen percent (15%) of the amount of this contract . . . may be in the form of a

pro rata interest in the Contractor's portion" of the August 20, 1970 agreement between Williams & Burrows and I.E.D., C.M.I., M.C., and Oceanside. This latter agreement provided for payment of the final $680,000 due to the contractor, Williams & Burrows, in accordance with a promissory note from I.E.D., payable two years from completion of the project and secured by a third trust deed on the property, or from proceeds generated by disposition of the property over and above the amounts required to first repay the construction lender, C.M.I.

Respondent argues, and the court found, that the maximum deferment in payment of the 15 percent retention was coincident with the due date of the promissory note, two years from completion of the project. Nothing in either of the subcontracts or the August 20 agreement to which they refer supports such a construction. Neither the trial court nor respondent offers any explanation for the finding that the due date of the promissory note from I.E.D. to Williams & Burrows was the final date for payment of the 15 percent retention from Williams & Burrows to respondent, and we are unable to discern any basis for such a construction in the documents themselves.

At best, the documents are uncertain and ambiguous as to the due date of the retention payment. The extrinsic evidence must therefore be considered, and it mandates a construction contrary to that of the trial court. By its consent to the modification of the original contractual provisions (requiring payment of the retained sums, then only 10 percent, upon completion of the general contract), respondent agreed to accept a "pro rata interest in the Contractor's portion" of the August 20 agreement as payment for the final 15 percent of its contracts with Williams & Burrows. As detailed above, "Contractor's portion" of the August 20 agreement consisted of the secured promissory note from I.E.D. and potential proceeds from disposition of the property after completion of the project. Frederick West, who negotiated the modified contracts for respondent, testified that the contractor's representative, Frank Burrows, made *no representations* as to precisely when respondent would receive payment of the retained amount; rather, Burrows told him that respondent would receive the retention "once the building was sold," but made no representations as to *when* the building would be sold. This was consistent with Burrows' testimony that he told West that respondent would have, under the renegotiated contracts, a pro rata interest in amounts received by Williams & Burrows upon "final disposition" of the property. A letter written by West to one of

respondent's own subcontractors shortly after the new arrangement was finalized likewise described the scheme by stating that "the length of time that this money [the final 15 percent retention] would be withheld is at this stage *indeterminable* as it is intended that *if* the building would be sold immediately or within the next 12 months, we *would* then receive our money back and it *would* therefore be much the same as an ordinary retention." (Italics added.) The clear import of this statement is that if the property were not immediately sold, the effect would be different from an ordinary retention, i.e., respondent would be forced to wait for its payment.

Respondent, though asserting that the trial court construed the contract in light of "conflicting" extrinsic evidence and should therefore be upheld if the construction is reasonable, points to nothing in the record indicating the slightest conflict as to the parties' intentions and understanding regarding the retention arrangement. West stated that he was told that the new financing plan was necessary because of I.E.D.'s financial condition. Although there was a disagreement as to whether West was also told that the problems were partly due to cost increases, he (and respondent) was clearly aware of the precarious financial condition of I.E.D. Burrows also testified that contractor was not even relying on the third deed of trust as security, because the likelihood of collection on it was remote. Both parties thus fully realized that disposition of the property was the only likely source of funds for payment of contractor's $680,000 interest in the August 20 agreement, and therefore for payment of respondent's final 15 percent retention. Respondent accepted these risks, and the fact that it and the contractor are unable to collect on the note, or that the property has not yet been disposed of,[2] does not increase respondent's rights under its contracts with Williams & Burrows.

Respondent's further assertion, that the "may" language of the two contracts gave it the option of seeking payment directly from the contractor, is refuted both by the extrinsic evidence discussed above, and by the obviously unreasonable result that such a strained construction would create. (*Cohn* v. *Cohn,* 20 Cal.2d 65, 70 [123 P.2d 833].)

The trial court thus erred in ordering Williams & Burrows to pay the retention amount by July 27, 1975 or upon sale of the property.

---

[2] The property was apparently sold pursuant to foreclosure by C.M.I. in June 1974; I.E.D. was in bankruptcy proceedings. However, it appears that the sale, which was to C.M.I., has been nullified and at the time of trial the property had not been effectively sold.

Respondent's final payment will be due, as a pro rata share of Williams & Burrows' interest in the August 20 agreement, only when and to the extent that contractor's portion of the agreement itself bears fruit, as by recovery on the note or disposition of the property.

Respondent also contends that, in any event, it did not waive its bond or lien rights. Appellants do not dispute this assertion; indeed, it is supported by uncontradicted evidence. However, " 'The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal. . . .' (Civ. Code, § 2809.) Therefore, since the liability of a surety is commensurate with that of the principal, where the principal is not liable on the obligation, neither is the guarantor." (*U. S. Leasing Corp.* v. *duPont,* 69 Cal.2d 275, 290 [70 Cal.Rptr. 393, 444 P.2d 65].) "The general rule is that the liability of a surety (in the absence of a different contractual provision) accrues at the same time as that of the principal, or upon default of the principal." (*Bloom* v. *Bender,* 48 Cal.2d 793, 799 [313 P.2d 568].) Here, the contractor (principal under the bond) has not defaulted, as the final payment under the two contracts with respondent is not yet due, as explained above. Similarly, the deferred final payment agreed to by respondent precludes current recovery on any mechanics' lien on the property. Civil Code section 3140 (formerly Code Civ. Proc., § 1186.1, subd. (a)) provides: "Any original contractor or subcontractor shall be entitled to recover, upon a claim of lien recorded by him, only such amount as may be *due him according to the terms of his contract* . . . ." (Italics added.) The judgment against surety and owner must therefore also be reversed.

## II

The court concluded that respondent was not entitled to rescind its contracts with Williams & Burrows, based upon a finding that the contractor had disputed the amounts of certain unpaid invoices in good faith.

Although appellants dispute respondent's right to raise this issue, it is well established that a nonappealing respondent may request the reviewing court to consider such matters "for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal . . . ." (Code Civ. Proc., § 906.)

■ The sole ground stated in respondent's April 1972 notice of rescission was the failure of Williams & Burrows to pay sums allegedly due. Respondent does not contest substantiality of the evidence supporting the trial court's findings concerning these disputed progress payments. Rather, respondent relies on the contention that the work stoppage ordered by Williams & Burrows in July 1971 entitled respondent to rescission as a matter of law in April 1972.

■ We note that "a statement in the notice of certain grounds fo, rescission does not prevent the party from thereafter relying upon different and proper grounds. (*Hull* v. *Ray* (1931) 211 C. 164, 167, 294 P. 700.)" (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 695, p. 584.) ■ However, this rule is of no assistance to respondent, as the language of the contracts between it and Williams & Burrows is unambiguous as regards delays. Each contract provides as follows: "Should Subcontractor be delayed in the prosecution or completion of the work by the act, neglect or default of Owner, of Architect, or of Contractor . . . then the time herein fixed for completion of the work shall be extended the number of days that Subcontractor has thus been delayed . . . .

"No claims for additional compensation or damages for delays, whether in the furnishing of material by Contractor, or delays by other subcontractors or Owner, will be allowed by the Contractor, *and said extension of time . . . shall be the sole remedy of Subcontractor*; provided, however, that in the event, and in such event only, that Contractor obtains additional compensation from Owner on account of such delays, Subcontractor shall be entitled to such portion of the additional compensation so received by Contractor from Owner as is equitable under all of the circumstances. . . ." (Italics added.)

This provision clearly indicates the intent of the parties to make extension of time the exclusive remedy for delay. We need not consider whether the clause would have been effective if it operated as a forfeiture, by denying damages for delay, as respondent does not allege any monetary injury from such delay. (See *Hawley* v. *Orange County Flood Etc. Dist.,* 211 Cal.App.2d 708 [27 Cal.Rptr. 478]; *McGuire & Hester* v. *City Etc. of S. F.,* 113 Cal.App.2d 186 [247 P.2d 934].) "In effect, the clause was an advance waiver of any right to rescind . . . ." (*B. C. Richter Contracting Co.* v. *Continental Cas. Co.,* 230 Cal.App.2d 491, 501 [41 Cal.Rptr. 98]; see generally, 10 A.L.R.2d 801.) The cases cited by

respondent are not to the contrary. *Guerini Stone Co.* v. *Carlin Constr. Co.,* 248 U.S. 334, 341 [63 L.Ed. 275, 284, 39 S.Ct. 102], did hold that a delay caused by the general contractor, "so serious as to result in a total suspension of the work, with no reasonable prospect that it could be resumed within any reasonable time," gave the subcontractor a right to terminate its contract. However, although the contract in *Guerini* provided that time for completion of the work would be extended in the event of delays, it did not expressly purport to make this the *exclusive* remedy for such delays. ▮ Thus, the holding may be understood within the well-established rule that an intention to limit contractual remedies must be clearly expressed: "Where a contract expressly provides a remedy for a breach thereof, the language used in the contract must clearly indicate an intent to make the remedy exclusive." (*Nelson* v. *Spence,* 182 Cal.App.2d 493, 497 [6 Cal.Rptr. 312].) ▮ The instant contracts contain such clear language. *Integrated, Inc.* v. *Alec Fergusson Electrical Contractor,* 250 Cal.App.2d 287 [58 Cal.Rptr. 503], also cited by respondent, involved the additional point from *Guerini* of delay in progress payments, which, as noted above, is not an issue on this appeal.

The trial court thus properly concluded that respondent was not entitled to rescind its contracts.

The judgment is reversed and the trial court is directed to enter judgment in favor of appellants.

Rattigan, J., and Christian, J., concurred.