[Civ. No. 39315. First Dist., Div. Two. Apr. 12, 1978.]

RUSSELL LaCOUNT, Plaintiff and Respondent, v.
HENSEL PHELPS CONSTRUCTION COMPANY,
Defendant and Appellant.

758

## COUNSEL

James J. Duryea and Loraine A. Wallace for Defendant and Appellant.

Carnes & Bailey, Carnes, Bailey & Davis, Don E. Bailey and Robert E. Aune for Plaintiff and Respondent.

## OPINION

WHITE (C. W.), J.*—This is an appeal by defendant and appellant Hensel Phelps Construction Company from a judgment entered after a jury verdict was returned in favor of plaintiff and respondent Russell LaCount for damages sustained as a result of personal injuries he received on February 16, 1972, at Ben C. Gerwick Company construction yard in Petaluma, California.[1]

Appellant presents us with three contentions in this case. The principal question directed to us was to decide as a matter of law that the employer of an independent contractor is not liable for the physical harm to the employee of the independent contractor. What follows then is a rather detailed consideration of the facts and review of applicable law. We conclude that the trial court properly allowed the jury to decide liability under proper instructions on the doctrine of peculiar risk giving rise to a nondelegable duty. Appellant's remaining points claim trial court reversible error in regard to interpretation of contracts and instructions of law to the jury. However, we are unable to find any error in the trial court's application of the parol evidence rule, interpretation of the parties' contract and instructions to the jury in regard to particular safety

---

*Assigned by the Chairperson of the Judicial Council.

[1]The reporter's transcript of the 11-day jury trial was not designated as part of the record on appeal. Therefore the statement of facts is taken from the parties' briefs and from various documents filed in the trial court. A party may not seek a review of evidentiary matters in an appeal on a clerk's transcript. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 400, p. 4368.)

orders, nondelegable duty and the relationships of the parties. Accordingly, we affirm the judgment.

*Facts*

Appellant was employed by the Bay Area Rapid Transit District (hereinafter BART) as the general contractor for the construction of the Daly City BART station under BART contract 1M0071. In furtherance of that project appellant entered into a subcontract dated May 27, 1971, with Ben C. Gerwick Company (hereinafter Gerwick), a wholly owned subsidiary of Santa Fe Pomeroy, Inc. Under this subcontract Gerwick agreed to fabricate, deliver, and install 27 prestressed concrete girders, each weighing approximately 100 tons. The 100-ton girders were constructed at the Gerwick yard in Petaluma.

The enormous weight of the girders required special handling procedures for the loading of the girders on barges for delivery in San Francisco. Two separate gantry cranes, each with a capacity of 70 tons were used in tandem for lifting of the girders. Using these huge cranes mounted on tracks, the girders were carried to the barges where they were loaded.

In order to properly balance the barges for the trip down the Petaluma River to San Francisco, it was necessary to use ballast to "trim the barge." For this purpose other concrete girders were used. These weighed approximately eight tons each.

On February 16, 1972, the last of the 100-ton girders were being loaded. Respondent, an employee of Gerwick, was helping with the loading under the supervision of Gerwick's rigging foreman. One of the gantry cranes was being used to place ballast on the barge. The ballast selected for this particular operation was two girders each weighing eight tons. The ballast girders were hooked to slings (heavy wire cables) which were then attached to trolleys which rolled along a track on the underside of the overhead gantry crane. The load capacity of the trolleys was not properly marked as required by the California Administrative Code. At the time of loading the barge, there was a controversy as to the exact weight of the ballast girders. The Gerwick yard superintendent told the rigging foreman that the combined weight of the two girders was less than ten tons. It was later determined that the actual combined weight of the ballast girders was approximately 16 tons.

The rigging foreman decided to lift and load both girders at once. The two girders were lifted without incident but while trying to position the girders over the barge, the excess weight caused the trolley assembly on the crane to separate and the girders dropped. The trolley assembly struck respondent on the head. Respondent was knocked into the water and remained in the water until pulled to safety by several fellow employees. As a result of this incident, respondent suffered various injuries which are not the subject of this appeal.

On February 14, 1973, respondent filed a complaint in the Superior Court of San Francisco County naming appellant, as the general contractor for the BART station for which the concrete girders were being constructed, and Santa Fe International Corporation and Gerwick, as owners, operators, maintainers and controllers of the yard in Petaluma in which respondent was injured, as defendants.

Appellant answered and generally denied that any act or omission on its part caused injury to respondent. Appellant alleged as affirmative defenses that respondent was contributorily negligent and assumed the risk. Appellant also sought affirmative relief based on the negligence of respondent's employer.

Pursuant to a motion for change of venue the case was ordered transferred to Sonoma County Superior Court on June 26, 1973. In December of 1974, Santa Fe International Corporation and Santa Fe Pomeroy, Inc., sued herein as Gerwick, were dismissed without prejudice from the action.

On June 3, 1975, appellant's motion for summary judgment was denied. On August 18, 1975, appellant's motion for a separate trial on the issue of liability was denied.

On August 26, 1975, jury trial commenced before the Honorable Joseph P. Murphy. The proceedings resulted in a jury verdict for respondent. The damages were found to be $100,000 and were reduced to $90,000, based on a finding that respondent's negligence was 10 percent.[2] Judgment was entered on the jury verdict. Appellant's motion for a new trial was denied. Appellant filed a timely notice of appeal.[3]

---

[2]During the course of the trial appellant moved for a nonsuit and a directed verdict. After argument the trial judge denied each of the motions.

[3]Appellant purports to appeal from the order denying his motion for a new trial. Such an order is nonappealable. (Code Civ. Proc., § 904.) However, a notice of appeal

*Issues*

Respondent based his case against appellant on two theories. He contended that the general contractor, appellant, would be liable to him under the Restatement Second of Torts sections 413 and 416, which set forth the liability of the employer of an independent contractor under certain situations where there is a peculiar risk of harm involved.

In addition, respondent contended that, because of appellant's contract with BART, appellant assumed a nondelegable duty to insure the compliance by all "subcontractors" with all safety regulations and orders. Respondent contended that, under the terms of the BART contract and the May 27, 1971, contract between appellant and Gerwick, Gerwick became a subcontractor within the meaning of that term in the BART contract, thus creating a duty on the general contractor, appellant, to insure Gerwick's compliance with all safety regulations.

Appellant contends on appeal that as a matter of law the peculiar risk doctrine and the nondelegable duty doctrine are inapplicable to the instant case. Appellant also contends that the trial court improperly construed the contracts in question when it determined Gerwick was a subcontractor of appellant.

*The Peculiar Risk Doctrine*

Appellant first argues as a matter of law that sections 413 and 416 of the Restatement Second of Torts have no application to the instant case and therefore as a matter of law, it is not liable for the injuries sustained to an employee of an independent contractor.

The general rule is that an "employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." (Rest.2d Torts, § 409.) But as acknowledged in the comment to section 409, there are so many exceptions to the " 'general rule' " that it is applied only "where no good reason is found for departing from it." The question this court faces is whether as a matter of law it can be said that none of the exceptions are applicable in the instant case.

specifying such an order may be deemed to constitute an appeal from the judgment. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 336, p. 4315.)

Section 413 of the Restatement Second of Torts provides: "One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer [¶] (a) fails to provide in the contract that the contractor shall take such precautions, or [¶] (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

Section 416 of the Restatement Second of Torts provides: "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."[4]

The rule stated in section 427 of the Restatement Second of Torts is closely related to and to a considerable extent a duplication of the rule stated in section 416. Section 427 provides: "One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

The California Supreme Court has determined that employees of an independent contractor come within the word "others" found in the above-quoted sections of the Restatement Second of Torts. (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 254 [66 Cal.Rptr. 20, 437 P.2d 508]; *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407, 410-411 [20 Cal.Rptr. 12, 369 P.2d 708]; *Snyder* v. *Southern Cal. Edison Co.* (1955) 44 Cal.2d 793, 798 et seq. [285 P.2d 912].)

---

[4]In *Anderson* v. *Chancellor Western Oil Dev. Corp.* (1975) 53 Cal.App.3d 235, 240 [125 Cal.Rptr. 640], the court stated: "Section 413 is considered to cover the direct negligence of the employer and section 416 deals with vicarious liability in the employment of an independent contractor."

The Restatement Second of Torts does not define well the terms "peculiar risk" or "abnormally dangerous activity." Prosser described the principle as being "limited to work in which there is a high degree of risk in relation to the particular surroundings, or some rather specific risk or set of risks to those in the vicinity, recognizable in advance as calling for definite precautions. The emphasis is upon the 'peculiar' character of the risk, and the need for special, unusual care. . . . On the other hand, it is certainly not at all essential that the risk be an unavoidable one, necessarily involved in the work itself. It is enough that the usual or contemplated methods of doing the work are likely to lead to such a special risk, . . ." (Prosser, Torts (4th ed. 1971) pp. 473-474.) The court in *Holman* v. *State of California* (1975) 53 Cal.App.3d 317, 328 [124 Cal.Rptr. 773], stated the principle as follows: "While it is not essential that the work which the contractor is employed to do be in itself an extra hazardous or abnormally dangerous activity, or that it involves a high degree of risk to those in the immediate vicinity, it must involve some special hazard resulting from the nature of the work done which in turn calls for special precautions."

■ It is unnecessary to look to other definitions of "peculiar risks" or "inherently dangerous" activity because appellant concedes that "the construction of 100-ton girders may be inherently dangerous, . . ." That is, appellant does not ask this court to rule as a matter of law that the construction of 100-ton girders is not inherently dangerous. However, appellant argues that the injury in the instant case, as a matter of law, resulted from the collateral or casual negligence of Gerwick in the performance of the operative details of the work, and, therefore, it cannot be liable. Appellant is asserting that the risk which was in fact realized was not one inherent in the nature of the construction of 100-ton girders.

■ The employer of an independent contractor is not liable for the "collateral" or "casual" negligence by an employee of the independent contractor. (*Smith* v. *Lucky Stores* (1976) 61 Cal.App.3d 826, 830 [132 Cal.Rptr. 628].) The Restatement's rule concerning collateral negligence in section 426 reads in relevant part as follows: "[A]n employer of an independent contractor, unless he is himself negligent, is not liable for physical harm caused by any negligence of the contractor if [¶] (a) the contractor's negligence consists solely in the improper manner in which he does the work, and [¶] (b) it creates a risk of such harm which is not inherent in or normal to the work, and [¶] (c) the employer had no reason to contemplate the contractor's negligence when the contract was

made." The comment to section 426 states that the distinction between negligence of the independent contractor and collateral negligence is "one of negligence which is unusual or abnormal, or foreign to the normal or contemplated risks of doing the work, as distinguished from negligence which creates only the normal or contemplated risk." Prosser defines collateral negligence as follows: "The test of 'collateral' negligence, therefore, appears to be, not its character as a minor incident or operative detail of the work to be done, but rather its disassociation from any inherent or contemplated special risk which may be expected to be created by the work." (Prosser, Torts, *supra*, p. 475.)

The court in *Snyder v. Southern Cal. Edison Co.*, *supra*, 44 Cal.2d 793, 801, speaking of the liability of the employer of an independent contractor, stated as follows: " '. . . Such liability does not ordinarily extend to so-called "collateral" or "casual" negligence on the part of the contractor or his servants in the performance of the operative detail of the work. The negligence for which the employer is liable, as general entrepreneur, must be such as is intimately connected with the work authorized and such as is reasonably likely from its nature. Negligence in the doing of ordinary acts, not necessarily incidental, but only accidentally connected with the work, do not fall within the policy of the law which imposes the extraordinary liability upon the employer.' "

The "collateral" negligence exception to the peculiar risk doctrine has also been stated in terms of foreseeability or direct consequences. "In all of the cases which have imposed a vicarious liability under section 416, there is a direct causal relationship between a peculiar risk inherent in the work to be performed and the plaintiff's injuries. It is the foreseeability of that special risk which justifies the imposition of liability." (*Holman* v. *State of California*, *supra*, 53 Cal.App.3d 317, 330.) "A concomitant of the 'direct consequences' approach to the problem is the rule that liability of the employer of an independent contractor does not extend to the collateral negligence on the part of the independent contractor in the performance of the operative details of the work." (*Anderson* v. *Chancellor Western Oil Dev. Corp.*, *supra*, 53 Cal.App.3d 235, 241.)

Because the above distinctions between "collateral" or "casual" negligence and negligence of the contractor "intimately connected" with a peculiar risk are elusive, it may be helpful to look at an example. In *Smith* v. *Lucky Stores*, *supra*, 61 Cal.App.3d 826, the defendant hired an independent contractor to remove a sign from a store named "ARDENS."

The sign consisted of letters spelling out "ARDENS" and each letter was six feet by two and one-half feet and weighed between fifty and sixty pounds. The independent contractor's employees were removing the sign by means of a crane on a truck parked directly in front of the store. After a letter from the sign had been lowered to the sidewalk and leaned against the truck, the worker holding it negligently released his hold and a gust of wind blew it onto plaintiff. The court in *Smith* stated that the case presented a textbook example of "collateral" or "casual" negligence. The court indicated that defendant would have been liable to plaintiff if she had been injured while the independent contractor's equipment was lowering the letter from defendant's store. (*Id.,* at p. 829.) However, the court stated the negligence was collateral because there was no relationship between the particular act of negligence of the independent contractor and the peculiar risk.

The work to be performed by Gerwick under its subcontract with appellant involved the movement of 100-ton girders from the construction yard where they were fabricated to the barges upon which they were to be transported to place of installation. Appellant knew the loading operations would involve the lifting of the aerial girders and the ballast girders. A major inherent risk in any crane operation is certainly the overloading of the crane. Since it was necessary to use ballast to balance the barges that were to transport the girders, the use of the ballast was an integral part of the loading procedure. The loading of the ballast was " 'intimately connected with the work authorized.' " (*Snyder* v. *Southern Cal. Edison Co., supra,* 44 Cal.2d 793, 801.) There is a direct causal relationship between a peculiar risk inherent in the work of loading for proper transportation of 100-ton girders and the material necessary to balance the load (8-ton girders) and respondent's injuries which were sustained when a crane which was being used to load the ballasts was overloaded.

Appellant further attempts to support his argument that the peculiar risk doctrine is inapplicable to the instant case by citing *Anderson* v. *Chancellor Western Oil Dev. Corp., supra,* 53 Cal.App.3d 235, and *Elder* v. *Pacific Tel. & Tel. Co.* (1977) 66 Cal.App.3d 650 [136 Cal.Rptr. 203].) *Anderson* stands for the proposition that because of the strong public and legal policy favoring exclusivity of the workmen's compensation remedy and where the risk was solely to the independent contractor's employees who were the persons who were negligent, "strict interpretation of the concept of 'peculiar risk' and adherence to the basic rule of nonliability is indicated." (*Anderson* v. *Chancellor Western Oil Dev. Corp., supra,* at

p. 243.) In *Anderson* the employee of an independent contractor was injured when a scaffold which was improperly fastened fell on him. The court in *Anderson* held that as a matter of law "the use of a scaffold . . . does not constitute an inherently dangerous or peculiar activity." (*Id.,* at p. 243.)

In *Elder v. Pacific Tel. & Tel. Co., supra,* 66 Cal.App.3d 650, two employees of a subcontractor brought an action against a building proprietor and its general contractor. Plaintiffs were injured during the removal of an exterior fire escape platform at second story level. The platform, and both plaintiffs, had fallen to the ground when one of them, departing from the demolition plan and assuming that a steel U-beam surrounding the concrete slab was sufficient to support it, cut the last of the supporting rods before a shiploader was moved into place to take the weight. The court in *Elder,* citing *Anderson v. Chancellor Western Oil Dev. Corp., supra,* 53 Cal.App.3d 235, stated: "This concept of 'peculiar risk' is strictly interpreted, however, in cases in which the party injured is an employee of the independent contractor. . . ." (*Id.,* at p. 659.) The court then held that as a matter of law section 416 of the Restatement Second of Torts had no application to the facts presented in *Elder.* The court reasoned that the rule of nonliability may be properly applied where there is evidence that the independent contractor departed from the method contemplated and therefore created a risk not inherent in the work. (*Id.,* at pp. 659-661.) In reaching this conclusion, the court quoted from *Addison v. Susanville Lumber, Inc.* (1975) 47 Cal.App.3d 394, 402 [120 Cal.Rptr. 737], as follows: " '[i]t is axiomatic that every person who employs any contractor may anticipate that if the contractor hires untrained or otherwise incompetent employees, they will do their work unsatisfactorily, thus perhaps endangering themselves and third persons. Such a risk is ever present. But there is nothing peculiar or special about it; on the contrary it is common and general, and applicable to virtually every activity.' " (*Id.,* at p. 660.)

However, in *Western Contracting Corp. v. Southwest Steel Rolling Mills, Inc.* (1976) 58 Cal.App.3d 532 [129 Cal.Rptr. 782], a case which has a similar fact situation as that presented in the instant case, the court refused to hold as a matter of law that the peculiar risk doctrine was inapplicable. Western Contracting Corporation (Western), acting as a general contractor, entered into a written contract with the Department of Water Resources of the State of California for the construction of a dam near Castaic. Thereafter Western entered into a written subcontract with Southwest Steel Rolling Mills, Inc. (Southwest Mills) under which

the latter was to furnish and install reinforcing steel on the Castaic construction project. On April 27, 1970, Norman Kropchuk, an employee of Southwest Mills, was fatally injured while working as a reinforced ironworker on the Castaic dam project. He suffered fatal injuries when a section of heavy reinforced iron mat, held aloft by a crane, fell upon him and crushed him. Subsequently, Kropchuk's widow instituted a wrongful death action naming Western and others as defendants. Thereafter, relying solely upon express indemnity provisions in its subcontract with Southwest Mills, Western cross-complained against Southwest Mills for all sums which Western might be compelled to pay to Mrs. Kropchuk. Southwest Mills moved for summary judgment in its favor on Western's cross-complaint upon the contention that it was factually impossible for any situation to arise in which Western could be liable to the plaintiff in the main action (Mrs. Kropchuk) and also have a right of indemnification as against Southwest Mills. Determining that there was no triable issue of fact, the lower court granted Southwest Mills' summary judgment motion. Western appealed.

The court in *Western* noted that the "motion for summary judgment was grounded upon the supposition that Western could not be vicariously liable for negligence on the part of Southwest Mills because Southwest Mills was an independent contractor." (At p. 541.) The court then stated: "Because Southwest Mills was not an employee of Western, the doctrine of respondeat superior was inapplicable. However, there are a number of exceptions to the general rule that one who employs an independent contractor is not liable for that contractor's negligence. Particularly significant to the immediate case is the exception which recognizes that the employer is liable when the contractor is employed to do 'work in which there is a high degree of risk in relation to the particular surroundings, . . .' (Prosser on Torts (4th ed.) p. 473; see also Rest.2d Torts, § 416.) In *Woolen* v. *Aerojet General Corp.*, 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708], the Supreme Court held that an employer's liability under this exception can extend to employees of the independent contractor. While the record in the case at bar does not establish that this exception is definitely applicable in the immediate case, the facts suggest that it could be applicable. Such an inference is 'reasonably deducible' (Code Civ. Proc., § 437c) from the fact that the decedent was fatally injured on the dam jobsite when a crane dropped reinforced iron mat upon him." (*Id.*)

In *Western,* Southwest Mills contended that *Anderson* v. *Chancellor Western Oil Dev. Corp., supra,* 53 Cal.App.3d 235, prevents Western

from being vicariously liable to a Southwest Mills employee under the peculiar risk exception. The court distinguished *Anderson* as follows: "However, *Anderson* is inapplicable to the immediate case because the *Anderson* court expressly found that there was no inherently dangerous or peculiar risk under the factual situation which was there presented. (*Id.,* at p. 243.) In contrast, the evidence in the instant case suggests that such a risk may have been present. (See also *Van Arsdale* v. *Hollinger,* 68 Cal.2d 245 [66 Cal.Rptr. 20, 437 P.2d 508].)" (*Western Contracting Corp.* v. *Southwest Steel Rolling Mills, Inc., supra,* 58 Cal.App.3d 532, 541, fn. 5.)

Appellant asks this court to rule as a matter of law that the peculiar risk doctrine is not applicable in light of the fact that an employee of the independent contractor was injured. Although *Anderson* and *Elder* stand for the proposition that concept of peculiar risk is strictly interpreted when an employee of the independent contractor is the injured party, these cases do not stand for the proposition that every time an employee is injured the peculiar risk doctrine is inapplicable. Under the authority of *Western Contracting Corp.* this court cannot state as a matter of law that the use of a crane to lift girders and ballasts weighing from eight to one hundred tons is not an inherently dangerous or peculiar risk activity.

*Interpretation of Contract*

Appellant contends on appeal that the interpretation of the contract between BART and appellant and between appellant and Gerwick is a question of law and that the trial court's determination is not binding on the appellate court. Appellant asserts that the trial court erred in holding that Gerwick was a subcontractor within the meaning of the terms of BART contract 1M0071. Appellant wishes to have this court determine that Gerwick was not a subcontractor because a provision of the contract between BART and appellant provides that the compliance with the applicable safety rules, laws, regulations and orders by a subcontractor will be the responsibility of appellant.

In appellant's points and authorities in support of its motion for new trial and for judgment notwithstanding the verdict, it argues that the trial court improperly allowed testimony concerning the meaning of the contract. It appears from a letter to the trial judge from respondent's counsel that the extrinsic evidence concerned the custom and practice within the industry.

■ The parol evidence rule with certain exceptions prohibits the introduction of any extrinsic evidence, oral or written, to vary or add to the terms of an integrated written instrument. (*City etc. of San Francisco* v. *City Investment Corp.* (1971) 15 Cal.App.3d 1031, 1038 [93 Cal.Rptr. 690].) However, the exception to the parol evidence rule is broad—extrinsic evidence is admissible to demonstrate that there is an ambiguity in an instrument and for the purpose of construing this ambiguity. ■ When extrinsic evidence is offered to interpret a writing, the trial court must hear the evidence and then determine whether the language read in light of the proffered evidence is reasonably susceptible of the contended interpretation. ■ As stated by the California Supreme Court: " 'The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.' ■ To determine whether offered evidence is relevant to prove such a meaning the court must consider all credible evidence offered to prove the intention of the parties. 'If the court decides, after considering this evidence, that the language of a contract, in the light of all the circumstances, "is fairly susceptible of either one of the two interpretations contended for . . ." [citations], extrinsic evidence to prove either of such meanings is admissible.' (*Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) *ante,* pp. 33, 40 [69 Cal.Rptr. 561, 442 P.2d 641].)" (*Delta Dynamics, Inc.* v. *Arioto* (1968) 69 Cal.2d 525, 528 [72 Cal.Rptr. 785, 446 P.2d 785].)

■ If the interpretation of the contract turns upon the credibility of extrinsic evidence, the interpretation of the contract is not a question of law, but one of fact and it will not be overturned unless not supported by substantial evidence. (*Brawthen* v. *H & R Block, Inc.* (1972) 28 Cal.App.3d 131, 138 [104 Cal.Rptr. 486]; *Kaufman & Broad Bldg. Co.* v. *City & Suburban Mortg. Co.* (1970) 10 Cal.App.3d 206, 210 [88 Cal.Rptr. 858].) ■ Custom and usage of words in a certain trade are admissible to explain the meaning of the terms used in a contract. Custom and usage may not be used to vary the terms of the contract, but may be used as an aid in the interpretation of contracts. (*Verdugo Highlands, Inc.* v. *Security Ins. Co.* (1966) 240 Cal.App.2d 527, 532 [49 Cal.Rptr. 736]; see also *Peiser* v. *Mettler* (1958) 50 Cal.2d 594, 609-610 [328 P.2d 953, 74 A.L.R.2d 1]; *Ermolieff* v. *R. K. O. Radio Pictures* (1942) 19 Cal.2d 543, 550 [122 P.2d 3].)

It is clear that if the interpretation of the contract was based on extrinsic evidence, appellant may not seek review of whether the interpretation is based on substantial evidence on an appeal on a clerk's transcript. (6 Witkin, Cal. Procedure, *supra,* Appeal, § 400, p. 4368.) Since there is no way to determine from the clerk's transcript whether the trial court determined after hearing the extrinsic evidence if the contract was fairly susceptible of either one of the two interpretations asserted by the parties, this court must under rule 52 of the California Rules of Court presume that the record on appeal "includes all matters material to a determination of the points on appeal." Therefore, this court must presume that the interpretation of the contract did not turn upon the credibility of extrinsic evidence and was a question of law and, accordingly, this court is not bound by the determination of the trial court. (*Michel & Pfeffer* v. *Oceanside Properties, Inc.* (1976) 61 Cal.App.3d 433, 438 [132 Cal.Rptr. 179].)

Appellant contends that under BART contract 1M0071, Gerwick is only to be considered a subcontractor for part of its work, namely, the work done at the Daly City station and cannot be regarded as a subcontractor for the fabrication and loading of the girders which were done in Petaluma. Appellant relies on the following definition of subcontractor in BART's contract book: "*Subcontractor* means any person or persons, partnership, joint venture, corporation, or other entity which has an employee or employees at jobsite who fall within one or more of the classifications contained in the general, prevailing rate of wages and employer payments for health and welfare, vacation, pension and similar purposes in the locality identified in the applicable San Francisco Bay Area Rapid Transit District Notice to Contractors Requesting Bids. Subcontractor shall not mean District's Contractor or those whose only employee or employees at jobsite are engaged solely in the delivery or storage of materials." Appellant also relies upon the following definition of jobsite: "*Jobsite* means those areas where work expressly required under the applicable Contract Documents of the District must be performed."

There is no indication from the language of the definition of "jobsite" that the word "must" means that a particular place shall be designated specifically for the performance of work under the contract. It is clear that the fabrication of the 100-ton girders could not be done at the Daly City BART station. Since the contract called for Gerwick to fabricate, transport and to install the girders, it seems clear that the fabrication of the girders which was expressly required under the contract "must" be

performed at Gerwick's fabrication yard. Furthermore, the language of the contract does not indicate that an entity is to be regarded as a subcontractor for some of the work and not for other work required under the contract. There is no dispute but that Gerwick was a subcontractor for purposes of installation of the girders, and therefore it would appear that Gerwick should be regarded as a subcontractor for all of the work required under the contract. Accordingly, Gerwick was a subcontractor under the terms of the contract.

*Nondelegable Duty Doctrine*

■ Appellant argues that the trial court erred in giving the following instruction to the jury: "Testimony has been given that a trolley hoist was being used for lifting at the time of the alleged incident. *California Administrative Code,* Title 8, § 3913(g) states: A trolley suspension hoist means a hoist whose upper suspension member is a trolley for the purpose of running the hoist below a suitable runway. It may be either floor or cage-operated.

"*California Administrative Code,* Title 8, General Safety Order §3999, provides that: ... a crane, derrick, or hoist shall not be loaded beyond the rated capacity or safe working load, whichever is smaller.

"*California Administrative Code,* Title 8, §3941(a) provides as follows: The maximum rated capacity of all cranes shall be plainly marked on each side of the crane, and if the crane has more than one hoisting unit, each hoist shall have marked on it or its load block its rated capacity; and this should be clearly legible from the ground or floor.

"At the time of the incident in question, Defendant Hensel Phelps Construction Company had a non-delegable duty to the plaintiff to have the work of its independent subcontractor Ben C. Gerwick performed in accordance with the safety orders just read to you. Such duty is to exercise ordinary care to take the required precautions."

Appellant contends that under California law one cannot be vicariously liable for the failure of another to comply with safety orders unless one can be classified as a statutory "employer" rather than an employer of an independent contractor. However, in the instant case appellant as the employer of an independent contractor had under the terms of its contract with BART a nondelegable duty to see that safety orders were complied with. Appellant's contract with BART provides: "A7.6 Safety

and First Aid Requirements. The Contractor shall promptly and fully comply with and carry out, and shall without separate charge therefor to the District, enforce compliance with the safety and first aid requirements stated herein and in the BART Safety Manual, and those prescribed by applicable laws and regulations and as may be prescribed by any official or representative charged with the enforcement thereof, and shall take such other measures as may be necessary to the end that work shall be done in a safe manner and that the safety and health of the employees and the people of local communities is safeguarded. *Compliance with the provisions of this Article A7.6 by subcontractors will be the responsibility of the Contractor.* Attention is directed to all the Safety Orders of the Division of Industrial Safety of the State of California, which are available from the Printing Division, Documents Section, Sacramento 14, California." (Italics added.)

The case of *Delgado* v. *W. C. Garcia & Associates* (1963) 212 Cal.App.2d 5 [27 Cal.Rptr. 613], is applicable to the instant case. In *Delgado* appellants were the owners of a subdivision which had contracted with the City of San Jose to install a sewer system within the subdivision. Appellants subcontracted the work to another. One employee of the subcontractor was killed, another injured, when an unshored excavation built in violation of Industrial Accident Commission rules caved in. Appellant's contract with the city provided for compliance with the applicable safety orders. Appellants asserted in *Delgado* that it was not their responsibility to assure compliance with all applicable safety orders because they did not control the premises, instrumentality or employees of the subcontractor. The court rejected this argument and found where a contract with a public authority provides for compliance with safety orders, a general contractor may not delegate to an independent contractor the duties imposed upon him by the public authorities.

The same analysis is applicable to the instant case. Appellant contracted with BART, a public entity, and the contract provided that the responsibility of compliance with all safety orders will be that of appellant. Under the case of *Delgado* such duty was nondelegable.

Appellant contends that this court should follow the case of *West* v. *Guy F. Atkinson Constr. Co.* (1967) 251 Cal.App.2d 296 [59 Cal.Rptr. 286]. In *West*, Atkinson was a general contractor under a contract with the state to build a section of a freeway in Placer and Nevada Counties. Included in the contracted work was an overpass or bridge where the

highway crosses railroad tracks and a county road. Atkinson subcontracted the work of building and installing the girders of the overpass to American Bridge Company. An employee (the plaintiff) of American Bridge was injured when he fell from a hanging scaffolding. The court in *West* affirmed the trial court's determination that Atkinson owed no duty to plaintiff. However, the contract in *West* did not specifically require that the general contractor insure compliance with applicable safety orders by the subcontractor, as did the contract in *Delgado* and the instant case. Furthermore, in *West* it was not shown which of any safety orders were violated. Therefore, *West* is inapplicable to the instant case.

Appellant's closing brief raises the contention that the above-quoted instruction was error based on *Spencer* v. *G. A. MacDonald Constr. Co.* (1976) 63 Cal.App.3d 836 [134 Cal.Rptr. 78]. The court in *Spencer* held that Labor Code section 6304.5 precludes introduction into evidence or any other use of industrial safety orders in actions by employees against parties other than their employers.[5] In *Spencer,* an employee of an independent contractor fell from a scaffold and brought an action against the general contractor. The Court of Appeal upheld the trial court's determination that the safety orders contained in title 8 of the Administrative Code were inadmissible for any purposes.

It is unnecessary to determine whether Labor Code section 6304.5 bars the use of industrial safety orders in cases concerning the nondelegable duty doctrine in the third party actions in the instant case. Section 6304.5 precludes the use of such orders "in any personal injury or wrongful death action *arising after the operative date of this section, . . .*" (Italics added.) In *Spencer,* the court pointed out that the injury occurred, and the cause of action therefore arose *after* the operative date of section 6304.5. (*Spencer* v. *G. A. MacDonald Constr. Co., supra,* 63 Cal.App.3d 836, 857.) The operative date of the section was April 1, 1972. The injury to respondent herein occurred on February 16, 1972. It is thus irrefutable that the cause of action at issue here arose before the operative date of

---

[5]Labor Code section 6304.5 provides in full: "It is the intent of the Legislature that the provisions of this division shall only be applicable to proceedings against employers brought pursuant to the provisions of Chapter 3 (commencing with Section 6500) and 4 (commencing with Section 6600) of Part 1 of this division for the exclusive purpose of maintaining and enforcing employee safety. [¶] Neither this division nor any part of this division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action arising after the operative date of this section, except as between an employee and his own employer."

Labor Code section 6304.5 and that therefore, under the section's own explicit terms, it is inapplicable to respondent.[6]

We affirm the judgment.

Taylor, P. J., and Kane, J., concurred.

---

[6]In the case of *Frost* v. *Witter* (1901) 132 Cal. 421, 426 [64 P. 705], the Supreme Court noted that confusion had resulted from the neglect to define the terms "cause of action" and "action." It went on to state that, although an "action" is sometimes used to denote the suit in which the action is enforced, " 'An action is nothing else than the right or power of prosecuting in a judicial proceeding *what is owned to one,*'—which is but to say, an *obligation.* . . . The action therefore springs from the obligation, and hence the 'cause of action' is simply the obligation." (Italics in original; *Frost* v. *Witter, supra,* at p. 426.) It cannot be disputed that respondent's right to prosecute his action arose on the date of his injury, and this would certainly be true in any case where the statute of limitations was involved. (See Code Civ. Proc., § 340, subd. 3.) In this connection, Black's Law Dictionary (4th ed. 1968) in defining the word "arise," comments: "A cause of action or suit 'arises,' so as to start running of limitation, when a party has a right to apply to proper tribunal for relief." Therefore, respondent's action arose at the time that his right to sue came into being, i.e., on the date that the injury occurred.